In re the MARRIAGE OF Donna Lee HORSTMANN and Randall George Horstmann.

Upon the Petition of Donna Lee HORST-MANN, Appellee, and concerning Randall George HORSTMANN, Appellant.

No. 60593.

Supreme Court of Iowa.

March 22, 1978.

Charles A. Barker, Iowa City, for appellant.

William F. Sueppel, Iowa City, for appellee.

Considered by MOORE, C. J., and MASON, RAWLINGS, LeGRAND and REYNOLDSON, JJ.

MASON, Justice.

This is an appeal by Randall George Horstmann from the economic provisions of a decree terminating the marital relationship existing between him and petitioner, Donna Horstmann.

We set out in chronological order the legal proceedings giving rise to this appeal. March 5, 1976, Donna Horstmann filed a petition for dissolution of her marriage with Randall Horstmann. December 10, trial was had in this matter. December 20, the parties entered into a number of stipulations. March 10, 1977, the trial court filed its findings of fact, conclusions of law and decree. Respondent appealed from the decree challenging the $18,000 property distribution, the one dollar a year token alimony and the seventy-five dollar a week child support provisions of the decree.

October 31, 1969, Donna and Randall were married while in their junior year at the University of Iowa. Randall completed his undergraduate course of study and in 1973 obtained a masters degree at the University. The couple then moved to Des Moines because Randall had decided to attend law school at Drake University. In 1976 he received his law degree and was later admitted to the bar. At the time of trial he was in his first of two years as lawclerk to a federal district court judge. He had just received a $1000.00 cost of living increase which raised his take-home pay from $383.00 to $400.00 every two weeks or $900.00 a month.

During the term of the marriage Randall worked part time earning a total of $9196.00. At the time of trial he owed $450.00 on his Master Charge, $5680.00 to his parents, $7000.00 to a bank and $1500 to Drake University. It was stipulated he was to pay these debts.

Donna did not complete her formal education. In 1970 she gave birth to the couple's only child. Between 1973 and 1975, while Randall was attending law school, Donna worked at a bank in Des Moines. During the term of the marriage she earned $15,760.00 which was contributed by her to pay the family's living expenses. At the time of trial she owed $13,900.00 on a mobile home she had purchased after the couple separated. She was then employed at a bank in Iowa City. Her take-home pay was $405.00 a month but she would soon receive a raise of unknown amount. She testified the most she could ever hope to earn at her present job was $600.00 a month.

During the marriage the couple had been assisted financially by their parents. Randall's parents not only loaned him money but also provided free use of a mobile home for the family for four years. Donna's parents supplied the family with all the meat they used, bought Donna a car worth $3300.00 and provided the family with other money totaling $10,514.00.

From July of 1975 when the couple separated until October 28, 1976, Randall contributed $350.00 toward the support of Donna and the child. On that date the court ordered Randall to pay Donna $100.00 every two weeks and $250.00 as temporary attorney fees. At trial Donna's attorney established Randall had earned over $5,000.00 during this period and had also borrowed $2,000.00. He had paid no rent. He had not been required to pay tuition at Drake because he was editor-in-chief of the law review.

Prior to trial each party submitted a financial statement and affidavit to the court. Donna itemized the expenses necessary to support herself and the child. Her expenses totaled $740.00 (originally listed at $765.00 but amended at trial) which meant

she needed $335.00 a month above her salary to maintain herself and the child.

In his statement Randall itemized his expenses as $524.00 a month. It was also noted he had ordered a new car for which he would have to pay $166.00 a month. This car would replace a 1969 car he owned.

During the trial in this matter Donna testified to the following:

"Q. All right. In terms of property settlement, what is the property in this marriage? A. There is Randy's education, basically.

"Q. All right. And what are you asking for in terms of that? A. Approximately eighteen thousand dollars.

"Q. How did you compute that? A. Okay. I took my income over the last three years that I've contributed to the family, the lump sums of money that my mother has contributed—around five thousand, and then the ten thousand that she—they gave me in checks for babysitting, health insurance, Randy's clothing, my clothing, my daughter's clothing, et cetera.

"Q. And what did you take away from that to get down to the eighteen thousand? Did you deduct Randy's earnings? A. Okay. Yes. I deducted Randy's earnings, around nine thousand dollars.

"Q. Is this based on the fact that little, if any, of the funds from Randy's family, the Hills Bank loan or the Drake University loan went into family income? A. That is true."

Randall testified after his two years as a lawclerk were over he hoped to obtain employment with the United States Department of Justice. He believed his starting salary with the Department would be approximately the same as his current salary. He thought the salary increased about $1000.00 a year to a maximum salary of $26,000.

He explained monthly payments totaling $100.00 on the loans to the bank and the university would not have to begin until May of 1977. No testimony was elicited as to repayment of the $5680.00 loan from his parents.

March 10, 1977, the trial court issued its findings of fact, conclusions of law and decree which were filed March 18. In its conclusions of law the court made the following pertinent remarks:

"  *    *    *

"During the marriage Petitioner and her family gave assistance to Respondent in his continuing his education and obtaining his legal training leading to a law degree and admission to the bar. This obtaining becoming a lawyer through the efforts of both the parties is similar to the building of a business through the joint efforts of both parties that has good potential for the future. It is an asset of the marriage to be considered in the property division.

"It is to be noted that due to Respondent's attending school all of their married life together, that even with the loans obtained and the contribution of both parents (including use of a mobile home by his parents from 1969–73), that their joint average annual income while together was not high. Had Respondent been working at a full-time job, it is likely that their joint income would be higher with an attendant increase in living standards. Petitioner's earnings were substantially higher during their married life together. While a substantial financial sum and meat was [sic] contributed by her parents during the marriage, it was because Petitioner was their daughter and this could really be considered to be a de facto advance on her inheritance. It is true sums were borrowed for which Respondent is liable. However, all of their assets substantially contributed to making up deficiencies in income and educational expenses due to the fact that Respondent was a full-time student rather than a full-time employee during the marriage. In addition, Petitioner was deprived of his companionship and services when Respondent, out of necessity, had to study long hours. No savings were accumulated.

"These sacrifices would be acceptable if Petitioner could reap the future benefits of these sacrifices in the way of increased income and a satisfying life style as a result of his education and legal training. This

situation is unlike a joint business venture that failed although both parties contributed money and effort to the venture. It is not analogous to a situation where both parties held full-time jobs that didn't pay enough for them to accumulate any assets, or where one party held a job and the other took care of the child, or where one or both of the parties could not obtain employment; and in all of these situations, neither one is likely to be better off in the future as a result of the employment situation and sacrifices during the marriage.

"Naturally there is no guarantee that Respondent would have had a good paying job during the time he was in law school or that his practice of law will be a financial success."

In its decree the court dissolved the marriage and awarded Donna custody of the child. It then ordered Randall to pay Donna $18,000 of which $1500 plus accrued interest thereon would be due January 1, 1978, $1500 plus accrued interest due January 1, 1979, $3000 plus accrued interest each successive year until paid in full.

It awarded Donna $1.00 a year alimony in order to preserve the issue of alimony. The first payment thereon would be due December 31, 1977. It then divided up the debts and personal property of the parties as they had agreed in their stipulation.

The court next ordered Randall to pay Donna $75.00 a week in child support beginning March 25, 1977, and continuing until the child attains the age of eighteen, dies or becomes self supporting, whichever event shall first occur. It also made other orders which are not at issue here.

Respondent asserts the following issues are presented for review:

1. Is a law school education and admittance to the bar an asset of a marriage to be considered in a property division?

2. Did the trial court err in awarding alimony to the petitioner?

3. Did the trial court err in awarding an excessive amount of child support to the petitioner?

I. "Review of a decree granting dissolution of marriage, determining property rights and ordering alimony payments is de novo. It is our duty to examine the whole record and adjudicate rights anew on those propositions properly presented, provided issue has been raised and error, if any, is preserved in the course of the trial proceedings; while we give weight to the findings of the trial court, we will not abdicate our function as trier de novo on appeal. * * [citing authority]." *In re Marriage of Novak,* 220 N.W.2d 592, 597 (Iowa 1974).

II. Respondent contends the focal point and primary question of this appeal is whether Donna is entitled to an award based on the value of his education. If this question is answered affirmatively, Randall argues a second question is raised concerning the method of valuing the education. Once this method is determined, he maintains a third question arises as to whether the education is to be considered as an asset brought to the marriage or as an asset acquired during the marriage. It is of course his position the primary question should be answered negatively and that the trial court erred in answering it affirmatively.

In support of his position, respondent draws attention to *Todd v. Todd,* 272 Cal. App.2d 786, 78 Cal.Rptr. 131. In *Todd* the court stated, 272 Cal.App.2d at 791, 78 Cal. Rptr. at 134–135:

"If a spouse's education preparing him for the practice of the law can be said to be 'community property,' a proposition which is extremely doubtful even though the education is acquired with community moneys, it manifestly is of such a character that a monetary value for division with the other spouse cannot be placed upon it.

"In *Franklin v. Franklin* (1945) 67 Cal. App.2d 717, 155 P.2d 637, which held that a husband's cause of action for personal injuries is not considered 'property' for community division in a divorce action, the court stated (at p. 725, 155 P.2d at p. 641), 'the word "property," as used in the code sections relating to community property, does not encompass every property right acquired by either husband or wife during marriage * * *. The right to practice

medicine and similar professions, for instance, is a property right but it is not one which could be classed as community property.'

"At best, education is an intangible property right, the value of which, because of its character, cannot have a monetary value placed upon it for division between spouses.

" * * *

"It should be pointed out that the assets of the community were the results of defendant's legal education * * *."

As further support for his position respondent cites this court to various cases dealing with the question whether pension rights should be considered property of the marriage to be divided by the parties upon their divorce. He contends these cases stand for the proposition that pension rights are not property until the right to them has vested.

Respondent appears to be arguing the trial court considered his education to be property which when assigned a value such value could be divided between the parties. A major portion of petitioner's argument is aimed at refuting this argument.

We do not construe the court's conclusions of law as does respondent. Although it is true the court determined the education was an "asset" of the marriage to be considered in the property division, it explained it meant respondent was in a better position to achieve financial success because of his education than was his wife because of her lack thereof. He would be more likely to be better off financially in the future than she because of the employment arrangement and sacrifices of the marriage.

In any event, review in this court is de novo.

The question is whether a court in determining an equitable division of assets in a dissolution case may consider the future earning potential of a party based on the party's education or skill acquired during the term of the marriage.

A case involving this issue which is particularly in point is *Daniels v. Daniels*, Ohio App., 20 Ohio Opinions 2d 458, 185 N.E.2d 773. The couple in *Daniels* were married in 1953 while they were both students in college. Mrs. Daniels completed her education in June of 1958 when she received a degree in business administration. In August of that year she gave birth to the couple's only child. Mr. Daniels completed his education in June of 1959 when he received a degree in medicine. At the time of trial he was serving his residency specializing in obstetrics and gynecology and earned $300.00 a month.

Although most of their married life had been spent in school, the parties had each earned and contributed $6,000.00 toward their maintenance and education. The balance of their needs had been provided by Mrs. Daniels' father who had contributed sixteen to twenty thousand dollars.

At the time of the decree neither party had much in the way of tangible assets. The trial court awarded Mrs. Daniels a divorce and ordered Mr. Daniels to pay $24,-000.00 in alimony to her. It based this award almost entirely on Mr. Daniels' future earning capacity in the medical profession. In his appeal Daniels challenged the admissibility of his father-in-law's testimony regarding the amount of money he had contributed to the marriage.

At the time of the action an Ohio statute, section 3105.18, Revised Code, was as follows:

"The court of common pleas may allow alimony as it deems reasonable to either party, having due regard to property which came to either by their marriage, the earning capacity of either and the value of real and personal estate of either, at the time of the decree." See dissent in *Daniels*, 185 N.E.2d at 777.

In *Daniels*, 185 N.E.2d at 775–776, the court stated:

"In our opinion, the right to practice medicine, being in the nature of a franchise, constitutes property which the trial court had a right to consider in making the award of alimony. Accordingly, we find no merit in the defendant's contention that the evidence bearing upon that issue was not admissible.

" * * *

" * * * On the other hand, the defendant's only financial asset is a medical degree which should, under normal circumstances, carry with it a high potential earning power. Since the defendant has a present right to practice medicine, the amount of $300.00 per month which he presently earns in residency is not fairly indicative of his 'earning capacity' as that term is used in Section 3105.18, Revised Code."

This same point was made in a case which rejected the position an education is property. The Colorado Court of Appeals in *Marriage of Graham*, 555 P.2d 527 (Colo.App. 1976), reh. den., cert. granted, aff'd, decided, on the basis of *Todd v. Todd*, that even where an issue as to what constituted community property was not involved, an education is not property subject to division under Colorado law. It held, however, that an education was still a factor to be considered, in addition to others, in arriving at an equitable property division and in determining matters of maintenance and child support.

In *Graham* the court, 555 P.2d at 528, quoted with approval *Stern v. Stern*, 66 N.J. 340, 331 A.2d 257, wherein it was stated:

"We agree with defendant's contention that a person's earning capacity, even where its development has been aided and enhanced by the other spouse, as is here the case, should not be recognized as a separate, particular item of property . . . . Potential earning capacity is doubtless a factor to be considered by a trial judge in determining what distribution will be 'equitable' and it is even more obviously relevant upon the issue of alimony. But it should not be deemed property as such within the meaning of the statute."

In the oft-cited case of *Schantz v. Schantz*, 163 N.W.2d 398, 405 (Iowa 1968), this court set out premarital and postmarital criteria for courts to consider in making an equitable determination of financial or property rights and obligations of the parties to a divorce action. Premarital criterion 5 directs courts to consider the training, education and abilities of the parties. Postmarital criteria 6 and 10 provide that the earning capacity of each party is to be considered as are any other relevant factors which will aid in reaching a fair and equitable determination of the respective rights and obligations of the parties.

Although this court has apparently not stated in so many words skills or education as they affect future earning capacity may be considered in making an equitable division of assets or award of alimony, we have considered such factors often.

This court in *In re Marriage of Dally*, 222 N.W.2d 478, 482 (Iowa 1974), stated:

"As to the periodic payments of alimony and support, the question comes down to Carolyn's need and Claude's ability to pay. Carolyn has no training for a job. Claude has *skill and training. He has very good earning potential.* He can earn considerably more than when he was temporarily attending community college. His army fitness report states that he is a very good worker. * * *." (Emphasis supplied).

The following pertinent comments appear in *In re Marriage of Novak*, 220 N.W.2d at 597:

"It is obvious the settlement left all income producing property to petitioner. He is in good health, is *skilled* and testified the saw mill business alone *would net $10,000 a year in the future.* In contrast, respondent has a health problem, is not skilled and probably will remain at relatively the same level of employment in the future." (Emphasis supplied).

The earning capacity referred to in *Schantz* has not been and should not be limited to consideration of only the actual earnings of the parties to a dissolution at the time of the dissolution. To do so here would result in inequitable treatment of petitioner.

It is clear from the evidence her earning capacity is limited because she did not finish college. She sacrificed her education to have the couple's child and to support the family while respondent went to school. It is equally clear respondent's earning capacity is not as limited as petitioner's. In his

first employment as an attorney his income already surpasses that of petitioner who has been employed for three years.

Earlier in this opinion we cited the Colorado case of *Marriage of Graham* and pointed out that certiorari to the Colorado Court of Appeals had been granted. The decision of the Supreme Court in that case was filed January 9, 1978, Colo., 574 P.2d 75. The judgment of the Court of Appeals which held a masters degree in business administration does not constitute community property which is subject to division by the court upon dissolution of the marriage was affirmed. However, the Colorado Supreme Court pointed out that when maintenance is sought in a dissolution of marriage proceeding and a need is demonstrated the contribution of the spouse seeking maintenance to the education of the other spouse from whom maintenance is sought is a relevant factor to be considered in fixing the amount of such maintenance.

We recognize as stated by the Colorado Supreme Court in *Graham* that an educational decree "does not have an exchange value or any objective transferable value on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed, or pledged. An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property." Colo., 574 P.2d at 77.

■ Under the facts and circumstances of the case before us we have no quarrel with the pronouncement of the majority in *Graham* which would mean that the law degree from Drake University and the certificate of admission to practice law in the courts of this state do not themselves constitute an asset of the parties for court consideration in making distribution upon dissolution of the marriage. However, it is the potential for increase in future earning capacity made possible by the law degree and certificate of admission conferred upon the husband with the aid of his wife's efforts which constitutes the asset for distribution by the court. Section 598.17, The Code.

■ We hold a trial court in a dissolution case where proper evidence is presented may consider the future earning capacities of both parties and in determining those capacities it may consider the education, skill or talent of both parties. This statement of principle, articulated in *Schantz*, applies to the court's determination of an equitable distribution of assets and property and to a determination of whether alimony should be awarded and, if so, to the amount to be awarded. *In re Marriage of Beeh*, 214 N.W.2d 170, 174 (Iowa 1974).

■ Respondent contends even if an education is a proper factor to be considered, here the petitioner did not establish the actual value of this factor on the market. He argues such evidence was not introduced because it was either not available or if available was not reliable. There is no merit in this contention.

Respondent himself introduced evidence his education cost at least $14,000. He testified he had borrowed that amount and used it to pay for his education. Both parties testified very little of this money had gone to pay family expenses. No testimony was introduced as to how respondent's earnings of $9196.00 was spent but it appears he must have spent it on meals and other necessities while he attended various schools.

The evidence establishes the cost of the education. While there are, of course, other methods that could have been used to establish the value of respondent's education, there is nothing incorrect about the approach used here. Petitioner has not cross-appealed the determination and is apparently satisfied with the amount of the award.

In the circumstances here the distribution of the assets of the parties as made by the trial court is justified.

III. Respondent contends the award of the trial court for child support was excessive and, therefore, was incorrect. He maintains the award results in an unequal sharing of the support obligations of the parties. His major argument centers on the fact he cannot pay all his expenses, the property settlement, his loan debts and the child support.

The award is based on the factors set out in *In re Marriage of Zoellner*, 219 N.W.2d 517, 525 (Iowa 1974). It takes into account the husband's ability to pay as well as other factors shown in the record.

The award was justified.

IV. Respondent contends the trial court's award of alimony is incorrect. He urges this court to reverse and find no alimony should have been awarded or in the alternative to limit the duration of the award to a certain number of years or to the time petitioner remarries. He admits that the one dollar per year does not burden him but argues the potentiality of a larger award in the future looms over him and may deter him from entering relationships and undertakings which he would otherwise pursue.

We believe the trial court's award was justified under the circumstances. The child support award brings petitioner's income only to a level where she can live modestly.

In the event petitioner, at some time in the future, files application for modification of the amount of alimony awarded under the court's present decree supported by a showing of a material and substantial change in the circumstances of the parties making it equitable that different terms be fixed as provided in section 598.21, The Code, respondent will have opportunity at that time to seek limitations on the duration of such payments.

V. Petitioner has requested this court assess respondent the cost of her attorney fees incurred in this appeal. We have reviewed the attorney's itemized fees and without commenting upon the amount of fees petitioner should pay we determine only what portion thereof should be paid by respondent. Petitioner should be allowed the sum of $1000 toward her attorney fees, payable one half thereof on or before July 1, 1978, and the balance on or before December 1, 1978. There shall be no interest if payments are made as directed. Otherwise, delinquent payments shall bear interest as provided in section 535.3, The Code. Any amount due her attorneys above this allowance must be made by her. Judgment shall be entered in the trial court for the amount allowed in this court.

As part of counsel's affidavit attached to the application for fees on appeal counsel lists certain out-of-pocket expenses. The item of $83.61 claimed as costs for printing briefs will be taxed as part of the costs in this case. The remaining items of expense totaling $44.23 shall be paid at this time by respondent.

The case is—Affirmed.