A. Delores HUBBARD, Appellee,

v.

R. O. HUBBARD, Appellant.

No. 49660.

Supreme Court of Oklahoma.

Nov. 13, 1979.

Sandra Johnson and Loyd Benefield, Benefield, Shelton & Tyree, Oklahoma City, for appellee.

Kent F. Frates, Oklahoma City, for appellant.

PER CURIAM:

This case involves an appeal from the actions of a trial court in a divorce proceeding. Appellant, Dr. R. O. Hubbard, has appealed from various findings and orders rendered in a divorce action brought in Oklahoma County by his wife, Delores Hubbard. Appellant husband presents five questions for review by this Court. Appellant contends:

1. The trial court erred in granting plaintiff a divorce on the grounds of extreme cruelty, when all the acts offered in support of this ground had been "condoned."

2. The opinion testimony offered by a supposed "expert witness" as to the Appellant husband's future earning capacity was wrongly admitted into evidence to the prejudice of the defendant.

3. The trial court's division of property and award of alimony in lieu of property was inequitable.

4. Any alimony awarded in the decree should have been alimony for support and maintenance, and as set in the trial court's decree, designating such alimony as alimony in lieu of property division was inequitable and excessive.

5. The trial court erred when overruling defendant's demurrer and motion to dismiss, both addressed to plaintiff's request for attorney fees.

I.

We will address the issues in the order presented. Accordingly, we will first decide whether the trial court erred in granting the divorce on the grounds of extreme cruelty.

Although he denies any acts of cruelty took place, Dr. Hubbard argues that the alleged acts of cruelty upon which Ms. Hubbard relies do not constitute grounds for divorce, as all those alleged acts had been condoned. In *Every v. Every,* Okl., 293 P.2d 612, 614, 615 (1956), this Court stated:

"Condonation in the law of divorce is the forgiveness of an antecedent matrimonial offense *on condition that it shall not be repeated,* and that the offender shall thereafter treat the forgiving party with conjugal kindness. 27 C.J.S., Divorce, § 59, p. 608; and as this court said in *McDaniels v. McDaniels,* 152 Okl. 258, 4 P.2d 112, 114: 'Condonation is an affirmative defense, and, like other affirmative defenses, must be specially pleaded or insisted upon in the answer as a defense.'" [Emphasis added]

In *Estee v. Estee,* 34 Okl. 305, 125 P. 455 (1912), this Court held that when, after mistreatment of a wife has been condoned by her, the husband is guilty of similar misconduct, the condoned offense is revived. In so holding, we stated:

"The evidence shows that after the trouble had first arisen between the parties, with reference to the money, that they separated, and that afterwards, upon the solicitation of defendant, plaintiff went back to live with him. This was a condonation of past ill treatment, and, if the defendant had conducted himself properly toward his wife from that time on, she could not have been heard to allege, as a ground for divorce, any of his previous misconduct; but when he again made the insinuations complained of, and was guilty of other misconduct and mistreatment, he revived the condoned offense; and the court did not err in hearing all the testimony as to his mistreatment of her during their married life."

In the case before us, although the testimony was somewhat conflicting, there was evidence in the record demonstrating that Appellant husband, after a reconciliation, had again mistreated his wife. It is clear that the effect of this conduct would have been to revive the past indiscretions, which

were condoned. Additionally, the record contains evidence showing that Ms. Hubbard's decision to continue living with her husband, for a short period after the last misconduct occurred, was not based upon her having forgiven her husband's past conduct, but was based upon her intent to aid her husband financially, as her husband had recently been informed that his residency contract was not being renewed. Her decision to remain for a short period thus enabled the parties to save the expense of a second home or apartment. As the record contained evidence of acts that constitute cruelty, and evidence showing that any of the acts of cruelty, which may have been condoned, were revived by continued mistreatment, we cannot say that the trial court erred in granting the divorce on the basis of cruelty.

## II.

█ We next consider whether the trial court erred in admitting certain opinion testimony, which was admitted for the purpose of showing Dr. Hubbard's future income. In an attempt to establish the future income of Dr. Hubbard, the testimony of Dr. Turner Bynum was offered. Dr. Bynum is an Oklahoma City medical doctor who specializes as an internist. In testifying as to the average income of a general practitioner in Oklahoma City, Dr. Bynum relied in part upon information obtained from articles in publications dealing with medical economics. Dr. Hubbard's lawyer objected to such testimony on the basis that Dr. Bynum was not an expert in the field of medical economics. Objection to the testimony was also made on the grounds that the mere regurgitation of data from publications was a violation of the hearsay rule. Dr. Bynum, although not an expert in the field of medical economics was, because of his experience and background, certainly qualified to state his opinion as to the average income of general practitioners in Oklahoma City. He was also qualified to state his knowledge of what income could be expected from emergency room duty. The trial court did not err in admitting his testimony.

## III.

█ We next address Appellant's third and fourth propositions which assert error in the trial court's award to Ms. Hubbard of $100,000 in lieu of property division. Inasmuch as the propositions contain overlapping issues, we will consider them together. Appellant contends that the award is excessive and that any award should have been made for support and maintenance rather than property division as it was based on future earnings.

The trial court stated the following in making the award:

"The Court finds that the plaintiff helped support the defendant and the family by being employed throughout the time the defendant attended pre-medical school and medical school, and has contributed to such support during the defendant's internship and residency training. That the plaintiff has been the stabilizing force through all of defendant's training to be a doctor, and has contributed materially to his medical education.

"The court further finds that during the more than twelve years that plaintiff worked and helped defendant obtain his medical degree and train to be a doctor, she could look forward to the time when she would enjoy the prestige and position, as well as the financial comfort, of a doctor's wife. That the granting of a divorce, through no fault of plaintiff, prevents her from reaping those rewards. She is relegated to her pre-marital status, except for the acquiring of an insubstantial amount of property, not recompensed for the years she has helped the defendant to attain his professional standing.

"The court further finds that the defendant is now on the threshold of a successful professional life, an able-bodied man, and has a present income of some $20,-000.00 annually. That as a medical doctor his reasonable anticipated income will be $30,000.00 to $60,000.00 per year.

"The court finds that the plaintiff has a vested interest in the defendant's medical

profession, which is deemed to be a valuable property right. The only means of awarding her that property right is by alimony in lieu of division of property.
* * *

"The court further finds that the defendant is reasonably expected to earn $500,000.00 over the first twelve years of his beginning practice of medicine, with a net income of not less than $250,000.00. That the plaintiff is entitled to forty percent (40%) thereof as alimony in lieu of division of property. That plaintiff is therefore entitled to judgment as permanent alimony in lieu of a division of property in the amount of $100,000.00 payable as set out herein below."

Appellant complains that the trial court's award improperly considered his future earnings as jointly acquired property. He contends that his future earnings and his medical license are not "property" which can be divided upon divorce.

Appellant relies on the recent Colorado Supreme Court decision of *In re Marriage of Graham*, 574 P.2d 75 (1978), where, by a sharply divided vote (4–3), that Court held an educational degree was not "property" capable of division in marriage dissolution proceedings. In *Graham* the wife had worked and contributed 70% of the family income while her husband attended school and acquired an MBA degree. The divorce occurred after Mr. Graham's graduation but before he had begun his professional career and the parties had not accumulated any marital property, as that term is traditionally used. Testimony before the trial court showed that the degree had increased Mr. Graham's earning capacity by more than $80,000.00. The trial court determined that Mr. Graham's education was jointly-owned marital property in which Mrs. Graham had a property interest and awarded her the sum of $33,134.00.

Reversing that judgment, the Supreme Court determined that an educational degree is not encompassed within the concept of property and is therefore ineligible for valuation and division upon dissolution of a marriage. In so holding, the majority stated that an educational degree:

" * * * does not have an exchange value for any objective transferable value on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed, or pledged. An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property. In our view, it has none of the attributes of property in the usual sense of the term."

The majority concluded that a spouse's contributions to the acquisition of a professional degree could be considered only in the matters of alimony for support and maintenance (to which Mrs. Graham was not entitled under the Colorado statutes) and for property settlement where marital property existed to be divided.

We have no quarrel with the *Graham* majority's resolution of the "property" question. Clearly a professional degree or license is the intangible and indivisible "property" of its holder and no other person has a vested interest therein. This determination does not mean, however, that Ms. Hubbard is thereby precluded from receiving an award in lieu of property division, for this case presents broad questions of equity and natural justice which cannot be avoided on such narrow grounds.

While it is true that Dr. Hubbard's license to practice medicine is his own to do with as he pleases, it is nonetheless also true that Ms. Hubbard has an equitable claim to repayment for the investment she made in his education and training. To hold otherwise would result in the unjust enrichment of Dr. Hubbard. He would leave the marriage with an earning capacity increased by $250,000.00 which was obtained in substantial measure through the efforts and sacrifices of his wife. She, on the other hand, would leave the marriage without either a return on her invest-

ment or an earning capacity similarly increased through joint efforts. Without her direct and indirect contributions to his education, training and support, Dr. Hubbard would have been forced to either prolong his education or go deeply in debt. It was because of her efforts that he was relieved of the burden of supporting himself and his family and was able to devote his time and attention to his education interrupted only by some part time employment.

Ms. Hubbard's sacrifices in Mr., now Dr., Hubbard's behalf were made with the anticipation that she and the family would ultimately benefit from the increased earning potential that would accompany her husband's license to practice. That anticipation was not without a basis in fact, for few persons in our current society reap greater financial rewards for their services than medical doctors, particularly neurosurgeons, the specialty for which appellant was in training.

It is precisely because of this total joint commitment to Dr. Hubbard's education and training that there were few conventional assets such as an expensive home, furnishings, savings or investments, to divide at the time of the divorce. All the resources of the marriage had been dissipated on Dr. Hubbard's education.

There is no reason in law or equity why Dr. Hubbard should retain the only valuable asset which was accumulated through joint efforts, i. e., his increased earning capacity, free of claims for reimbursement by his wife.

If the parties had remained married for a period of time after Dr. Hubbard began practicing and had accumulated tangible property by means of his increased earning capacity, Ms. Hubbard would have been entitled to have her contributions to his education considered and compensated.

We are not rendered impotent to do equity between these parties simply because the divorce occurred immediately preceding the start of Dr. Hubbard's professional career.

We are persuaded by the suggestion in the forceful dissenting opinion in *Graham* that the doctrine of quasi contract offers a remedy for a spouse in these circumstances. In addition to its observation that in other contexts (tortious injury, wrongful death) the law recognizes and protects a spouse's interest in the earning capacity of the other, that decision stressed the responsibility of the courts to fashion extraordinary remedies to prevent extraordinary injustice.

The dissent's suggestion was followed by the Court of Appeals of Kentucky in its recent decision of *Inman v. Inman*, Ky. App., 578 S.W.2d 266 (1979). There the court found that Mrs. Inman, whose financial contributions had aided her husband's ability to attend dental school, did have an interest in his degree "measured by . . . her monetary investment in the degree, but not equivalent to recovery in quasi-contract to prevent unjust enrichment." at 269. The court held that when, as in the case of the Inmans', little or no marital property has been acquired through the increased earning capacity provided by the supported spouse's degree or training, the amount spent for direct support and school expenses during the period of education plus reasonable interest and adjustments for inflation should be apportioned to the spouse who subsidized the education.

Recognizing that we will be in the minority of jurisdictions affording relief by means of property settlement to a spouse in Ms. Hubbard's circumstances [1], we nonetheless adopt the persuasive reasoning of the *Graham* dissent and the *Inman* decision and hold that Ms. Hubbard has a right to be compensated for the amount of her investment in Dr. Hubbard's education and training to prevent his unjust enrichment.

Equity would not be served by holding, as Appellant suggests, that Ms. Hubbard's re-

---

1. See also, *In re Marriage of Horstmann*, Iowa, 263 N.W.2d 885 (1978), where the Supreme Court of Iowa held that the potential for increase in future earning capacity made possible by a law degree and certificate of admission conferred upon the husband with the aid of his wife's efforts constituted an asset for distribution by the court in a marriage dissolution proceeding.

covery be limited to alimony for support and maintenance. To do so would force her to forego remarriage and perhaps even be celibate [2] for many years simply to realize a return on her investments and sacrifices of the past twelve years.

We agree in principle with the trial court that Ms. Hubbard is entitled to a cash award in lieu of property settlement, but we limit the factors determining that award to fair compensation for her past investment, rather than a "vested interest" in his future earnings.

■ In a cause of equitable cognizance such as this we are not bound by either the reasoning or the findings of the trial court, but may, where the law and facts warrant, affirm the judgment if it is sustainable on any rational theory, and the ultimate conclusion reached therein is correct. *Moree v. Moree*, Okl., 371 P.2d 719 (1962). We therefore affirm the trial court's determination that Ms. Hubbard is entitled to a cash award in lieu of property division but remand for further consideration so that award may be calculated in accord with this opinion.

To avoid unnecessary confusion and speculation, we stress that we have done nothing in this action but allow Ms. Hubbard a return on her investment to prevent Dr. Hubbard's unjust enrichment. We view this recovery as limited by the facts of the case before us. Different considerations would obviously apply to situations where both parties of a marriage had increased their earning capacities through joint and reciprocal efforts, or where the nonlicense holder had already realized a financial benefit from his or her investment in the other's earning capacity, or where conventional marital property existed which could be divided to work equity. We find this decision entirely consistent with the intent of our statute authorizing the division of property in a divorce proceeding [3] and previous decisions.[4]

■ We therefore remand to the trial court with instructions to determine the amount of Ms. Hubbard's contributions to Dr. Hubbard's direct support and school and professional training expenses, plus reasonable interest and adjustments for inflation as and for property division alimony, and for further action not inconsistent with this opinion.

In so ruling, we are cognizant of the fact that the trial court, being unable to determine and divide the property as it sought, may wish to reconsider its order pertaining to support alimony. The trial court is therefore empowered to reconsider the issue of support alimony on remand and, if necessary, to conduct an evidentiary hearing for the purpose of hearing additional evidence as to the future income of the parties.

■ In *Colvert v. Colvert*, Okl., 568 P.2d 623 (1977), we held, as we have in other cases, that one of the elements which the trial court may consider in awarding alimony is the future earning capacity of a spouse. We also held that under the provisions of 12 O.S.Supp.1976, § 1289, the trial court could, at the time of the decree, designate all or a portion of each alimony payment as support or alimony pertaining to a division of property. Our holding in that case should not be read to mean that a court can consider the future earnings of a spouse in setting the amount of alimony, then designate the alimony payments based on future income as property division alimony. Insofar as *Colvert, supra*, appears to stand for that proposition, it is overruled.

---

**2.** Laws, 1979, c. 278, § 1, eff. October 1, 1979, amending 12 O.S.Supp.1978, § 1289.

**3.** 12 O.S.Supp.1978, § 1278, provides: " * * * As to such property, whether real or personal, which has been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall make such division between the parties as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof. * * *"

**4.** See e. g., *Diment v. Diment*, Okl.App., 531 P.2d 1071 (1974).

## IV.

Lastly, we consider whether the trial court had the authority to continue its consideration of a prayer for an award of attorney fees. In the decree entered by the trial court, the court specifically provided that it retained jurisdiction to further consider the prayers made for an award of attorney fees. After the case had been appealed, the trial court did conduct a hearing on the question of attorney fees, but failed at that time to render a decision, as the Appellee wife's attorney indicated that he did not wish to introduce evidence as to attorney fees at that time, but, rather, wished to introduce such evidence after the case had been decided on appeal, so that all attorney fees could be decided at one time. At the hearing, the trial court refused to sustain a demurrer to Ms. Hubbard's evidence and also refused to dismiss the prayer for attorney fees with prejudice.

Clearly, the decree as entered was a final order, as it resulted in a final adjudication of all issues involved, save attorney fees, which we consider to be an item of cost. We do not find that the trial court's action constituted error, but we do believe that it would be better procedure for the trial court to rule on the question of trial attorney fees at the time the trial of the case is completed.

For the above stated reasons, we affirm the action of the trial court in part, reverse the action of the trial court in part, and remand the cause to the trial court with instructions.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED TO THE TRIAL COURT WITH INSTRUCTIONS.

WILLIAMS, HODGES, BARNES, SIMMS, DOOLIN and HARGRAVE, JJ., concur.

LAVENDER, C. J., IRWIN, V. C. J., and OPALA, J., dissent.

LAVENDER, Chief Justice, dissenting in part:

Section 1278 of 12 O.S.Supp.1978 authorizes an award of alimony which is not based on any need of the spouse in whose favor it is allowed but, in effect, is based on a finding that the recipient contributed to the enrichment of the other so that in equity an alimony award in lieu of a division (in kind) should be made. Section 1278 says that such an award ". . . may be allowed . . . out of real and personal property of the other as the court shall think reasonable, . . ."

The other kind of alimony is provided for in 12 O.S.Supp.1978, § 1289 and terminates (absent an agreement by the parties to the contrary) upon the remarriage of the recipient "unless the recipient can make a proper showing (of need)." It also terminates upon the recipient's death.

If I were writing the majority opinion, I would affirm the $100,000.00 award of alimony allowed by the trial court under § 1278, supra. My conclusion is based on equitable considerations as distinguished from technical rules of the law of property. I would not require before a § 1278 alimony award could be entered that there be physical assets in being in which the spouse against whom the alimony is to be allowed has a present vested interest recognizable at law.

I agree with the dissent in the Colorado case of *In re Marriage of Graham*, Colo., 574 P.2d 75, 78, 79 (1978) that in situations such as exist in the case before us the function of a court of equity is to prevent extraordinary injustice. I would go along with the majority in the case of *In re Marriage of Horstmann*, Iowa, 263 N.W.2d 885 (1978) where that court agrees with the principles of property law that the wife, under circumstances similar to those here, acquires no interest in the husband's license to practice his profession, but the potential for an increase in the husband's future earning capacity to the extent it was made possible by the wife's efforts does constitute an asset (of the husband) out of which an award of alimony in lieu of a division of property can be made.

I respectfully dissent to that portion of the majority opinion which reverses the

award of alimony by way of division of property. I concur in the other portions of the opinion.

I am authorized to state that IRWIN, V. C. J., and OPALA, J., concur in the views herein expressed.