1999 OK 99

**Linda H. JACKSON,**
**Plaintiff/Appellee/Counter–Appellant,**

v.

**Kenneth C. JACKSON,**
**Defendant/Appellant/Counter–Appellee.**

**No. 88751.**

Supreme Court of Oklahoma.

Dec. 14, 1999.

Kenneth W. Klingenberg, Klingenberg & Associates, P.C., Oklahoma City, Oklahoma for Plaintiff/Appellee/Counter–Appellant.

Arnold D. Fagin, R. Amanda McInnis–Nixon and Tracy Cotts Reed, Fagin, Fagin, Nixon & Reed, P.C., Oklahoma City, Oklahoma for Defendant/Appellant/Counter–Appellee.

BOUDREAU, J.

¶1 Two issues are tendered for corrective relief on certiorari: (1) Did the trial court abuse its discretion when it determined that the circumstances of this case warranted an alimony judgment in lieu of property in favor of Wife to reimburse her for her investment in Husband's medical education and training, and (2) if so, did Wife adequately preserve for appeal the refusal of the trial court to award her support alimony? We answer both questions in the affirmative.

## I. Factual Background

¶2 Linda Jackson filed a petition for divorce against Kenneth Jackson on August 31, 1995. The couple had been married twenty-four years. At the time of the divorce, Dr. Jackson worked as a physician earning a monthly gross income in excess of $16,000. Mrs. Jackson had not worked outside the home for 15 years prior to the divorce. In her petition for divorce, Mrs. Jackson sought, among other things, an equitable division of

the parties' marital property as well as support alimony.

¶ 3 After a trial, the court essentially divided the parties' conventional marital assets in half. These assets included a profit sharing plan, a money purchase plan, the adjusted book value of Dr. Jackson's medical practice and the marital home of the parties, which the court ordered to be placed on the market with the proceeds to be divided upon sale. Dr. Jackson maintained the entirety of an IRA account and a life insurance policy with an available cash value. In addition, the court awarded Mrs. Jackson an alimony judgment in lieu of property division in the amount of $648,830.00, which was intended to reimburse her for her investment in Dr. Jackson's medical education and training. The court denied Mrs. Jackson's request for support alimony.

¶ 4 Dr. Jackson appealed, contending that the parties' marital circumstances did not warrant awarding Mrs. Jackson an alimony judgment in lieu of property to reimburse her for her investment in his medical education and training. Mrs. Jackson filed a counter-appeal asking the Court to re-examine the issue of support alimony in the event the alimony judgment in lieu of property was reversed on appeal. The Court of Civil Appeals issued an opinion which affirmed the decree of the trial court in all respects but one; the court reversed the alimony judgment in lieu of property. The Court of Civil Appeals found that the principals enunciated in *Hubbard v. Hubbard*, 1979 OK 154, 603 P.2d 747, the case upon which the trial court premised the property award, did not apply to the Jackson's case. The Court of Civil Appeals refused to reexamine the issue of support alimony, stating that Mrs. Jackson failed to properly preserve it for consideration.

¶ 5 Mrs. Jackson sought certiorari in this Court following the Court of Civil Appeals opinion. On certiorari, Mrs. Jackson claims error in both the Court of Civil Appeal's reversal of the alimony judgment in lieu of property and in its refusal to address the issue of support alimony.

¶ 6 On certiorari granted upon Mrs. Jackson's petition, the Court of Civil Appeals

opinion is vacated; the trial court's award of an alimony judgment in lieu of property in favor of Wife is reversed; and the cause is remanded to the trial court for further proceedings consistent with today's opinion.

## II. Hubbard Award

¶ 7 "A divorce suit is one of equitable cognizance and the trial court has discretionary power to divide the marital estate. The reviewing court will not disturb the division absent some abuse of discretion or a finding that the [ ] decision is clearly contrary to the weight of the evidence." *Teel v. Teel*, 1988 OK 151, 766 P.2d 994, 998.

¶ 8 In the case in controversy, Dr. Jackson acquired most of his medical education and training after he and Mrs. Jackson married. During the course of his medical studies and residency, she worked as a research assistant to help support the family. In addition to Mrs. Jackson efforts, Dr. Jackson's parents also assisted the family, paying for their son's tuition to medical school and providing him a monthly allowance. Dr. Jackson completed his medical education and training and commenced an active medical practice approximately fifteen years prior to the filing of the divorce. In the divorce decree, the trial court, relying on *Hubbard v. Hubbard*, 1979 OK 154, 603 P.2d 747, awarded Mrs. Jackson an alimony judgment in lieu of property in an effort to reimburse her for her investment in the education and training of Dr. Jackson.

¶ 9 On appeal, Dr. Jackson contended that the circumstances of the case did not warrant the use of the extraordinary remedy fashioned in *Hubbard*, a remedy designed to prevent the unjust enrichment of one spouse at the expense of the other. The Court of Civil Appeals agreed with Dr. Jackson and concluded that the trial court ignored the directives of *Hubbard* by going far beyond the limited use of the remedy sanctioned by the decision. We agree.

¶ 10 *Hubbard* involved the divorce of a doctor and his wife immediately after the doctor finished his medical residency. In *Hubbard*, the parties had few conventional marital assets to divide at the time of the

divorce because all the family resources had been dissipated on Dr. Hubbard's education. The case initially presented the issue of whether Dr. Hubbard's license to practice medicine was property susceptible to division as jointly acquired property in the divorce proceeding. The *Hubbard* court concluded that it was not because a "professional degree or licence is the intangible and indivisible 'property' of it's holder and no other person has a vested interest therein." *Id.* at 750.

¶ 11 However, the *Hubbard* court also recognized that under the unique circumstances presented, Mrs. Hubbard had an equitable claim "to be compensated for the amount of her investment in Dr. Hubbard's education and training to prevent his unjust enrichment." *Id.* at 751. The court reasoned:

> While it is true that Dr. Hubbard's license to practice medicine is his own to do with as he pleases, it is nonetheless also true that Ms. Hubbard has an equitable claim to repayment for the investment she made in his education and training. To hold otherwise would result in the unjust enrichment of Dr. Hubbard. He would leave the marriage with an earning capacity increased by $250,000.00 which was obtained in substantial measure through the efforts and sacrifices of his wife. She on the other hand, would leave the marriage without either a return on her investment or an earning capacity similarly increased through joint efforts.

*Hubbard v. Hubbard,* 1979 OK 154 ¶ 13—14, 603 P.2d 747, 750–51. To effect a repayment to Mrs. Hubbard for her investment, the court sanctioned a cash award in lieu of property based on Mrs. Hubbard's past contributions to Dr. Hubbard's support, education and training with reasonable interest and adjustments for inflation. *Id.* at 752.

¶ 12 The *Hubbard* court stressed, however, that this form of recovery was limited to the facts of the case before it. It noted that "[d]ifferent considerations would obviously apply to situations where both parties of a marriage had increased their earning capacities through joint and reciprocal efforts or where the non-license holder has already re-alized a financial benefit from his or her investment in the other's earning capacity or where conventional marital property existed which could be divided to work equity." *Id.*

¶ 13 The marital circumstances of Dr. and Mrs. Jackson are clearly distinguishable from those of the Hubbards. The Hubbards divorced at the time Dr. Hubbard commenced his medical practice which prevented Mrs. Hubbard from having her contributions to his education and training considered and compensated. In contrast, the Jacksons divorced more than fifteen years after Dr. Jackson completed his medical training and commenced an active practice. During those years, Mrs. Jackson lived an affluent lifestyle supported by the significant income (often in excess $230,000 annually) Dr. Jackson earned. She resided in a luxury house. She traveled throughout the world, volunteering for a Christian ministry in which she had a great interest. In short, Mrs. Jackson had ample opportunity to enjoy the fruits of her investment in Dr. Jackson's education and training.

¶ 14 The marital circumstances of the Jacksons and those of the Hubbards differed in another significant way. At the time they divorced, the Hubbards had acquired almost no conventional property which could be divided to work equity. In contrast, the Jacksons accumulated substantial marital property, of which Mrs. Jackson received essentially half. The trial court, in the manner in which it divided the marital property, provided Mrs. Jackson with another form of return on her past investment in Dr. Jackson's education and training.

¶ 15 In summary, the circumstances of the Jacksons differ substantially from those faced by the Court in *Hubbard.* Unlike Mrs. Hubbard, Mrs. Jackson has already realized a financial advantage from her investment in her spouse's education and training, both in the form of benefits derived from the increased earning capacity that accompanied his license to practice and in the form of acquired marital property. Unlike Dr. Hubbard, Dr. Jackson does not stand to be unjustly enriched by the divorce. The marital circumstances of the Jackson's do not require the use of the extraordinary equitable reme-

dy fashioned in *Hubbard.* The trial court abused its discretion when it awarded Mrs. Jackson an alimony judgment in lieu of property to compensate her for her investment in Dr. Jackson's education and training.

### III. Reexamination of the Support Alimony Issue

■ ¶ 16 Mrs. Jackson requested support alimony at trial. The trial court denied the request awarding Mrs. Jackson, instead, an alimony judgment in lieu of property which provided her with a monthly income of approximately $5,400.00 for a period of ten years. When the Court of Civil Appeals reversed the alimony judgment in lieu of property, it refused to review the order of the trial court denying Mrs. Jackson support alimony. The Court of Civil Appeals reasoned that Mrs. Jackson failed to support the argument in her counter-appeal with any authority. On certiorari, Mrs. Jackson maintained she properly preserved the support alimony issue for appellate review. We agree.

■ ¶ 17 While it is true that claims of error for which there are no support in argument or authority are deemed abandoned, *Hadnot v. Shaw,* 1992 OK 21, 826 P.2d 978, 981, this rule has no present application to the case in controversy. A review of the record on appeal reveals that Mrs. Jackson adequately supported her claim of error relating to the trial court's failure to award support alimony with legal authority. In her Counter–Petition in Error, Exhibit "C", Mrs. Jackson raised three issues on counter appeal, each of which requested the court to re-examine the issue of support alimony in the event that it reversed the alimony judgment in lieu of property on appeal. In her appellate brief, Mrs. Jackson again advanced the issue of support alimony in the event that the appellate court disturbed the alimony judgment in lieu of property. In her brief, she set out traditional arguments relating to the right to a support alimony allowance and provided supporting legal authorities discuss-

ing the various factors or circumstances to be considered by the court in making a support alimony award.[1] The Court of Civil Appeals erred when it concluded that she failed to properly preserve the support alimony issue for appellate review.

¶ 18 In ruling on Mrs. Jackson's request for support alimony, the trial court unquestionably evaluated the evidence relating to her need for support alimony in light of the fact that she was receiving a significant alimony in lieu of property award. In fact, the exact purpose of the alimony in lieu of property award was unclear to counsel even at trial, where Dr. Jackson's counsel asked the trial court to clarify whether the *Hubbard* award was in the nature of support or alimony in lieu of property. [Tr. 15] The trial court acknowledged the uncertainty and stated the award was to be looked at as property in lieu of alimony, but then went on to say there would be no award of support alimony apart from the *Hubbard* award. [Tr. 15—16]

¶ 19 By reversing the alimony in lieu of property judgment in favor of Mrs. Jackson, this Court has substantially altered the manner in which the trial court determined and divided the marital property. Accordingly, the trial court is therefore directed to reconsider the issue of support alimony on remand and, if necessary, to conduct a hearing for the purpose of securing additional evidence.

### IV. Attorney Fees

■ ¶ 20 Both parties requested an award of attorney fees on appeal. As with attorney fees incurred at the trial court level, an award of appeal related attorney fees in a divorce proceeding is subject to a judicial balancing of the equities. *Hickman v. Hickman,* 1997 OK 49, 937 P.2d 85. In view of the fact this matter is remanded to the trial court for further proceedings and each party will need further legal services upon remand, we will allow the trial court to conduct the appropriate balancing of equities to determine if either party is entitled to appeal related attorney fees. Therefore, each par-

1. Mrs Jackson cited the following cases referencing support alimony: *Bond v. Bond,* 1996 OK CIV APP 3, 916 P.2d 272; *Wood v. Wood,* 1990 OK CIV APP 49, 793 P.2d 1372; *Primrose v.* *Primrose,* 1983 OK CIV APP 22, 663 P.2d 755; *Diment v. Diment,* 1974 OK CIV APP 52, 531 P.2d 1071; *Conrad v. Conrad,* 1970 OK 1, 471 P.2d 892.

ties' request is denied at this time, without prejudice to the right of either to petition the trial court for an award of attorney fees upon appeal. *See Coker v. Coker,* 1969 OK 167, 460 P.2d 424, 428 (wife requested attorney fees and was partially successful upon appeal, Supreme Court allowed trial court to make determination upon remand); *See also Agee v. Agee,* 1996 OK CIV APP 78, 924 P.2d 786, 788 (trial court "cannot determine in a post-appeal proceeding a party's liability for appeal-related counsel fees incident to a terminated appeal unless such award has been authorized by an appellate court's pronouncement or by some of its post-decisional orders.") (quoting *Chamberlin v. Chamberlin,* 1986 OK 30, 720 P.2d 721); Rule 1.31 of Rules of Appellate Procedure in Civil Cases, 12 O.S., Ch. 15, App. 2(a)(5).

¶ 21 CERTIORARI PREVIOUSLY GRANTED. OPINION OF THE COURT OF CIVIL APPEALS IS VACATED. TRIAL COURT AWARD OF ALIMONY IN LIEU OF PROPERTY IS REVERSED AND CAUSE REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.

¶ 22 SUMMERS, C.J., HODGES, LAVENDER, KAUGER, and WATT, JJ., concur.

¶ 23 HARGRAVE, V.C.J., and OPALA, J., concur in part and dissent in part.

