2003 OK CIV APP 11

**Deborah HANEBUTT, Plaintiff/Appellee,**

v.

**Mark HANEBUTT, Defendant/Appellant.**

**No. 95,335.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Nov. 8, 2002.

Certiorari Denied Jan. 28, 2003.

Rees T. Evans, Oklahoma City, OK, for Plaintiff/Appellee.

Philip J. Tucker, Noel K. Tucker, Roxane Gautreaux–Carte, The ·Tucker Law Firm, Edmond, OK, For Defendant/Appellant.

OPINION

ADAMS, Judge:

¶ 1 Mark Hanebutt (Husband) appeals the trial court's judgment in this divorce case, contending (1) the trial court erred in awarding Deborah Hanebutt (Wife) restitutionary alimony under *Hubbard v. Hubbard,* 1979 OK 154, 603 P.2d 747, and (2) even if such alimony was appropriate, it was excessive. We conclude the trial court's decision awarding Wife restitutionary alimony is clearly against the weight of the evidence and therefore modify the trial court's order to eliminate that obligation.

¶ 2 Husband and Wife had been married for almost 26 years when the trial court granted the divorce. They married shortly after Husband completed his bachelor's degree in journalism and lived in Florida until 1981 while Husband worked as a journalist. The record contains no testimony concerning either parties' earnings during this period,

but does indicate Wife completed her nursing degree during this period. In 1981, they moved to Oklahoma, where Wife was initially employed by her father, and Husband, with Wife's agreement, spent most of his time working on a novel. Between 1981 and 1987, Husband was employed only part-time and also completed most of the course work for a master's degree in English at what is now the University of Central Oklahoma (then Central State University). He completed requirements for that degree, including his thesis, in 1990. During those seven years, Wife's employment provided approximately 97 percent of the family income.

¶ 3 Beginning in 1988, Husband began teaching full time at UCO and was still on the faculty at the time of trial. After that date, Husband's employment provided approximately 61 percent of the family income. Beginning in 1994, Husband attended law school at Oklahoma City University. He received his Juris Doctor degree in 1998 and was admitted to the Oklahoma Bar two weeks before the trial in this case. Both parties agreed that the expenses for Husband's education were paid using funds received as a result of employment by Wife, Husband, or both during the marriage. Although the trial court received no evidence concerning the cost of obtaining Husband's master's degree, Wife's expert testified the law school expenses, adjusted for inflation and with interest, totaled $58,525.

¶ 4 The record supports the conclusion that the trial court evenly divided a net marital estate of approximately $120,000, not including tangible personal property divided in kind. The bulk of that estate was made up of the equity in the parties' home and in their respective retirement and profit-sharing accounts maintained by employers. Neither party attempted to place a value on the unpublished manuscript of the novel written by Husband. The trial court awarded Husband all rights to that work, which was com-

pleted in its present form prior to the time Husband started his legal education.

¶ 5 According to Wife's expert, her financial contribution to Husband's graduate education, adjusted for inflation and interest,[1] equaled $275,654.00. He arrived at that figure by calculating, for each year from 1981 through 1996,[2] Husband and Wife's relative contributions to the total family income. In every year in which Wife provided more income than Husband, 1981 through 1987, he gave wife a credit, adjusted for inflation and interest from that year, for the amount her income exceeded one half of the total family income. In every year in which Husband provided more income than Wife, 1988 through 1996, he reduced the total amount of Wife's credits by the amount Husband's income exceeded one half of the total family income. The trial court heard no evidence that the parties' incomes changed in any appreciable sense in the two years following the data used by Wife's expert.

¶ 6 In addition to dividing the property, setting child support, and awarding Wife support alimony, the trial court ordered Husband to pay Wife restitutionary alimony of $58,000.00, payable at $400.00 per month. In doing so, the trial court found Wife was not entitled to a *Hubbard* award for her contributions to Husband's education which led to his master's degree because the family had enjoyed the increased level of income enabled by that education during the latter years of the marriage. The *Hubbard* award was specifically for Wife's contributions to Husband's legal education. Wife did not file a counter-appeal and does not dispute the trial court's finding that she had already received a "return on her investment" in Husband's master's level education. In his appeal, Husband contends Wife was not entitled to a *Hubbard* award and, alternatively, the amount awarded was excessive.

¶ 7 The *Hubbard* Court created the concept of restitutionary alimony because it

---

1. Husband did not present any expert testimony and did not otherwise challenge the expert's adjustments. Accordingly, we express no opinion on whether the expert adopted a correct approach in making those adjustments. For reasons which are not stated in the opinion, the *Hubbard* Court seems to have required the appli-

cation of *both* inflation and interest, although generally those might be considered *alternative* adjustments under these circumstances.

2. 1996 was the last year for which the expert believed he had reliable income figures.

determined that the right to pursue a profession, even one with substantial income potential, could not be perceived as "property" for purposes of making an equitable property division in a divorce action. The Court perceived a significant inequity in allowing one spouse to retain the benefits of a professional education and license and the substantially increased earning potential attributed to such an education and license where the other spouse had contributed financially beyond the level the parties' might have expected had the education not been pursued and the contributing spouse had no opportunity to enjoy the benefits of his or her sacrifice in the form of increased income.

¶ 8 To avoid that inequity, the Court directed a cash award in lieu of property division. In setting that award, the Court directed the trial court to determine "Mrs. Hubbard's contributions to Dr. Hubbard's direct support and school and professional training expenses, plus reasonable interest and adjustments for inflation." 1979 OK 154, ¶ 27, 603 P.2d at 752.

¶ 9 Moreover, *Hubbard* very carefully limited its application, and the remedy recognized there has been characterized as an "extraordinary equitable remedy." *Jackson v. Jackson,* 1999 OK 99, ¶ 15, 995 P.2d 1109, 1112–1113. Accordingly, we begin our analysis with the recognition that restitutionary alimony is the exception and not the rule.

¶ 10 The undisputed evidence indicates that during the period Husband was obtaining his legal education and his license to practice law, his employment provided more than half of the family's support, therefore it cannot be fairly concluded that Wife, in any financial sense, contributed to his "direct support," as that term is used in *Hubbard.* The parties expended approximately $44,000 in expenses for Husband's legal education and professional legal training. During that same period Husband contributed approximately $44,000 more to the family income than did Wife.[3]

¶ 11 In addition, the trial court heard undisputed evidence that the parties' purpose in

Husband's obtaining a law degree was not for him to practice law but for Husband to obtain the terminal degree required for him to remain a member of the faculty at UCO. *Hubbard* recognized that the contributing spouse's motivation, at least in part, for making the financial sacrifices necessary to allow the other spouse to obtain a professional degree was the expectation of increased financial reward once the degree was obtained. *With regard to the Husband's legal education,* Wife had no such expectation.

¶ 12 Considering the limited application of the extraordinary equitable remedy created in *Hubbard,* Husband's contribution to the family income during the time he was obtaining his legal education, and the parties' undisputed purpose in obtaining Husband's legal education, any award of restitutionary alimony is clearly against the weight of the evidence and an abuse of discretion. The trial court's order is modified to delete the *Hubbard* award and is affirmed as modified.

AFFIRMED AS MODIFIED.

HANSEN, P.J., and MITCHELL, J., concur.

---

**3.** We arrive at this income figure by using the same income for 1997 and 1998 as that earned in 1996, the last year used by Wife's expert.