2012 OK CIV APP 29

**Thomas Jefferson POUNDERS, III, Petitioner/Appellant,**

v.

**Laura Elizabeth POUNDERS, Respondent/Appellee.**

**No. 108197.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Feb. 24, 2012.

James A. Kemp, Ada, Oklahoma, for Appellant.

Thomas J. Hadley, Hugo, Oklahoma, for Appellee.

LARRY JOPLIN, Vice–Chief Judge.

¶ 1 Petitioner/Appellant Thomas Jefferson Pounders, III (Husband), seeks review of the trial court's order dividing property and granting alimony in lieu of property division to Respondent/Appellee Laura Elizabeth Pounders (Wife) in the parties' action for dissolution of their marriage. In this appeal, Husband challenges the division as against the clear weight of the evidence, and the award alimony as without legal or factual basis.

¶ 2 Husband and Wife married in 2003. During the marriage, Husband used marital monies to pay child support and other expenses for the children of his previous marriage. Wife was aware of the payments and wrote out the checks for some of them.

¶ 3 On consideration of the testimony and evidence, the trial court awarded Wife alimony in lieu of property division in the approximate net sum of $22,400.00 to compensate her for the joint money used to pay Husband's support obligation. The trial court also awarded Wife her claims for unpaid wages from former employers, but assigned the claims no value.

¶ 4 Husband now appeals, challenging the award of restitutionary alimony as unauthorized. Husband also asserts the trial court erred in assigning no value to unpaid wage claims owed to Wife by her former employers.

¶ 5 On the valuation issue, Wife testified that her former employers owed her unpaid wages, and the trial court awarded the claims to her, but assigned the claims no value. However, Husband offered no evidence concerning the real value of the claims, or what portion of the unpaid claims constituted marital property. Given the unliquidated nature of those claims, we cannot say the trial court abused its discretion.

¶ 6 In support of the award of restitutionary alimony, the trial court relied on the cases of *Hubbard v. Hubbard,* 1979 OK 154, 603 P.2d 747, and *Jackson v. Jackson,* 1999 OK 99, 995 P.2d 1109. "*Hubbard* involved the divorce of a doctor and his wife immediately after the doctor finished his medical residency." *Jackson,* 1999 OK 99, ¶ 10, 995 P.2d at 1111. "[T]he *Hubbard* court ... recognized that under the unique circumstances presented, Mrs. Hubbard had an equitable claim 'to be compensated for the amount of her investment in Dr. Hubbard's education and training to prevent his unjust enrichment.'" *Id.* In *Hubbard,* the court reasoned:

> While it is true that Dr. Hubbard's license to practice medicine is his own to do with as he pleases, it is nonetheless also true that Ms. Hubbard has an equitable claim to repayment for the investment she made in his education and training. To hold otherwise would result in the unjust enrichment of Dr. Hubbard. He would leave the marriage with an earning capacity increased by $250,000.00 which was obtained

in substantial measure through the efforts and sacrifices of his wife. She on the other hand, would leave the marriage without either a *return on her investment* or an earning capacity similarly increased through joint efforts.

1979 OK 154, ¶ 13–14, 603 P.2d at 750–51. (Emphasis added.) "To effect a repayment to Mrs. Hubbard for her investment, the court [consequently] sanctioned a cash award in lieu of property based on Mrs. Hubbard's past contributions to Dr. Hubbard's support, education and training with reasonable interest and adjustments for inflation." *Jackson*, 1999 OK 99, ¶ 11, 995 P.2d at 1112. However, our Supreme Court cautioned:

To avoid unnecessary confusion and speculation, we stress that we have done nothing in this action but allow Ms. Hubbard a return on her investment to prevent Dr. Hubbard's unjust enrichment. *We view this recovery as limited by the facts of the case before us.* Different considerations would obviously apply to situations where both parties of a marriage had increased their earning capacities through joint and reciprocal efforts, or where the nonlicense holder had already realized a financial benefit from his or her investment in the other's earning capacity, or where conventional marital property existed which could be divided to work equity. We find this decision entirely consistent with the intent of our statute authorizing the division of property in a divorce proceeding and previous decisions.

*Hubbard*, 1979 OK 154, ¶ 23, 603 P.2d at 752. (Emphasis added.)

¶ 7 In *Jackson*, the parties "divorced more than fifteen years after Dr. Jackson completed his medical training and commenced an active practice." 1999 OK 99, ¶ 13, 995 P.2d at 1112. Consequently, in contrast to *Hubbard*, "Mrs. Jackson lived an affluent lifestyle supported by the significant income ... [and] had ample opportunity to enjoy the fruits of her investment in Dr. Jackson's education and training." *Id.* So, our Supreme Court held:

... Unlike Dr. Hubbard, Dr. Jackson does not stand to be unjustly enriched by the divorce. The marital circumstances of the Jackson's do not require the use of the extraordinary equitable remedy fashioned in *Hubbard.* The trial court abused its discretion when it awarded Mrs. Jackson an alimony judgment in lieu of property to compensate her for her investment in Dr. Jackson's education and training.

*Jackson*, 1999 OK 99, ¶ 15, 995 P.2d at 1112–13.

¶ 8 As we read these two decisions, it is clear to us that the concept of "restitutionary alimony" applies only under the facts of those cases, i.e., where one spouse has financed the education of the other, and, soon after graduation, the parties divorce. In that circumstance, where the wage earning spouse has not had the opportunity to enjoy the income from the fruits of his or her labor—putting the other through school—during the marriage, then a court of equity may intervene, and, to prevent unjust enrichment of the non-wage-earning spouse, award restitutionary alimony to the wage earning spouse. We will not read *Hubbard* and *Jackson* to authorize an award of restitutionary alimony outside the facts of those cases.

¶ 9 We consequently hold that neither *Hubbard* nor *Jackson* authorize, either expressly or implicitly, an award of restitutionary alimony in the present case to compensate Wife for Husband's use of marital funds to pay his pre-existing support obligation. In our opinion, the expansion of the reach of *Hubbard* and *Jackson* to permit restitutionary alimony in this case is not warranted, particularly where, as here, Wife arguably consented to Husband's use of marital assets to fulfill his prior support obligation. *See, e.g., In re Marriage of Burgess*, 568 N.W.2d 827, 828–29 (Iowa App.1997).[1]

---

1. "We do not believe the focus should be whether or not a spouse is personally responsible for a debt incurred by the other spouse, but whether the payment of the obligation was a reasonable and expected aspect of the particular marriage. Here, Linda was aware James had financial obligations from his prior marriages before marrying him. She knew of the expenditures and knew they would be part of her marriage. She acquiesced to the obligations throughout the marriage. Under the circumstances, it would be inequitable to conclude Linda was entitled to any

¶ 10 The trial court erred in granting restitutionary alimony to Wife. That part of the trial court's order is REVERSED. In all other particulars, the order of the trial court is AFFIRMED.

BUETTNER, P.J., and BELL, J. (sitting by designation), concur.

form of set-off"; "We agree with James the district court erred in dividing the property by considering his court-ordered obligations from his prior marriages. The depletion of marital assets by a spouse to satisfy this obligation is not a relevant factor to consider in dividing the property." (Citations omitted.)