In re the MARRIAGE OF Gary W. JANSSEN and Susan K. Janssen.

Upon the Petition of Gary W. Janssen, Appellee,

and Concerning Susan K. Janssen, Appellant.

No. 68917.

Supreme Court of Iowa.

May 16, 1984.

David Shinkle and Anna I. Shinkle of Shinkle & Shinkle, Des Moines, for appellant.

Jerrold B. Oliver and G. Stephen Walters of Webster, Jordan, Oliver & Walters, Winterset, for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, McCORMICK, McGIVERIN, and LARSON, JJ.

UHLENHOPP, Justice.

■ This appeal involves the economic terms of a marriage dissolution decree. We review de novo. *In re Marriage of Stuart*, 252 N.W.2d 462 (Iowa 1977).

Gary W. and Susan K. Janssen were married in 1966. Neither had an appreciable amount of property. Susan had just completed college with very high grades, majoring in biology and chemistry. Gary had two more years toward a pharmacy degree. During those two years Gary had outside part-time work during the school year and full-time work in the summer, and Susan worked full time as a medical technologist. Following graduation in 1968, Gary served as a pharmacy interne and then as a pharmacist, and Susan worked four days weekly until she took two months off when the parties adopted Lori, their first child. Both parties helped with the housework.

In 1973 the parties sold their house for a profit of $5500 and moved to Des Moines. With this profit and $2500 from a bank loan, Gary began osteopathic school. He also worked part time as a pharmacist, and Susan worked from thirty-six to forty hours per week at the Clinical Pathology Laboratory. In December 1973 Gary entered into a contract with the armed forces whereby he received his tuition, books, and $400 per month in exchange for a later period of active duty.

After Gary completed osteopathic school Susan devoted her energies to the home and family and, until recently, did not work outside the home. The family moved to Ohio where Gary served his internship, and then to the Grand Forks Air Force Base where Gary fulfilled his military commitment. At that time the parties adopted Kristine, their second child.

In April 1980 the family moved to Winterset, Iowa, where Gary was employed by a partnership of three medical doctors at a starting annual salary of $55,000. The parties bought a home for $86,000 with no down payment. At time of trial this property had decreased slightly in value and the parties had practically no equity in it.

In March 1981 Gary bought a one-fourth interest in the medical partnership for $126,101.36. He paid his partners $75,000 of borrowed money, signed notes to them for an additional $15,000, and assumed one-fourth, or $36,101.26, of the partnership's debts. Later that year one of the partners withdrew in return for $22,000 cash (as his one-fourth share of the firm's equity in its assets) plus his share of accounts receivable of about $250,000, to be paid as the accounts are collected. A substantial number of the accounts appear to be uncollectible. The net result of this transaction was to raise the cost of Gary's present one-third interest in the firm to $144,814.16. The record contains evidence from which a finding could be made that the withdrawing doctor accepted the price he did because he strongly desired to leave. In any event, Gary testified at trial that his equity in the firm at that time was worth $60,000 on paper. The physical assets of the partnership in addition to equipment consist of a Winterset clinic which has fourteen examining rooms, a laboratory, an x-ray room, an emergency room, a waiting room, and three business-type offices; a clinic at Earlham which has three examining rooms, a laboratory, an x-ray room, and an office; and a rental residential property in Earlham next to the clinic. The firm draws patients from a large surrounding area, employs two physicians' assistants and eighteen other employees, and recently em-

ployed a fourth doctor at a salary of $60,-000 per year plus his professional liability and health insurance premiums.

Gary's earnings from the firm were much mooted at trial. Although Gary endeavored to downgrade his income, substantial evidence indicates that by time of trial he was already in the annual range of $90,000 to $100,000. Ultimately, however, the question is not so much his current earnings as his earning capacity. With his background in pharmacy, his education in osteopathic medicine and surgery, his medical experience in the air force and in private practice, his industry, his health, and his favorable location, we would expect his income to rise in the future, depending on the amount of time he devotes to his practice.

About three months after Gary became a member of the partnership he commenced this action to dissolve the marriage and moved into an apartment. Susan had no funds of her own and realized she would have to return to work outside the home. After having begun to live on the scale of a physician's wife, she regarded medical technology as insufficiently remunerative. The parties disagree as to what she could earn as a technologist, from an annual low of about $14,000 to a high of about $28,000. In any event, Susan decided to enter the legal field. She achieved an outstanding result in her law school entrance test, and Drake Law School offered her the Leland Forest Scholarship—$4400 the first year and like sums the following two years if she is in the upper third of her class. She accepted Drake's offer.

The parties tried the dissolution case, and the trial court dissolved the marriage. The court awarded Susan custody of the two daughters; required Gary to pay $300 per month support for each child as well as their medical and dental insurance premiums; gave Gary the children as dependents for income tax purposes; granted Susan $600 per month alimony from Gary for thirty-nine months terminable sooner on her death, remarriage, or cohabitation with an adult male; transferred the home to Gary with the obligation to pay the mortgage; obligated Gary to pay the parties' considerable debts existing at the time of commencement of the dissolution action; gave Gary his interest in the medical partnership with the obligation to pay the debt for that interest; assigned to the parties their respective cars, bank accounts, and life insurance policies; granted Gary specified household goods and granted Susan the rest; made provision as to income tax consequences for certain prior payments; and awarded Susan $3808.15 toward her attorney fees.

Susan appealed. We transferred the case to the court of appeals, which increased the alimony to $1000 per month for eleven years and otherwise upheld the decree. On Gary's application we granted further review.

I. Susan contends that the financial provisions for her in the original decree are inadequate. Gary contends the increased alimony ordered by the court of appeals is excessive.

■ Both parties cite and argue *In re Marriage of Horstmann*, 263 N.W.2d 885 (Iowa 1978). The gist of that decision, in which the husband had a law degree, we stated thus:

> We hold a trial court in a dissolution case where proper evidence is presented may consider the future earning capacities of both parties and in determining those capacities it may consider the education, skill or talent of both parties. This statement of principle, articulated in *Schantz* [163 N.W.2d 398, 405 (Iowa 1968)], applies to the court's determination of an equitable distribution of assets and property and to a determination of whether alimony should be awarded and, if so, to the amount to be awarded.

*Id.* 263 N.W.2d at 891 (citation omitted). *Horstmann* thus held that a party's advanced degree is not a property to be divided in value, yet education is a factor to be considered on the party's earning capacity—and this is true not only on the issue of an "equitable division of assets" but also

as to whether "alimony should be awarded and, if so, to the amount to be awarded." *Id.* In *Horstmann* a lump sum was awarded taking into consideration the husband's earning capacity based on his legal training, whereas in this case periodic alimony was awarded taking into consideration the husband's earning capacity based on his training in osteopathic medicine and surgery.

Under *Horstmann* the question before us is not *whether* Gary's training should be considered; manifestly it *is* a factor in the case and it is a significant factor because it substantially enhances Gary's earning capacity. The question in this case relates mainly to other factors which determine an equitable adjustment of the parties' finances inter se.

■ II. Susan claims that she should be awarded a sum of money based on Gary's capacity to earn substantial sums because of his training. On the other hand, Gary cites all the obligations he must meet and argues persuasively that he simply does not have the wherewithal to pay a lump sum award. For reasons which we will state, we do not believe Gary's financial obligations in business relieve him from his financial obligations to his family. Yet we agree that as financial matters now stand—the realities of the present situation—the trial court was right in refusing a lump sum award. The same is true if Susan's lump sum claim is based on the value of Gary's share in the professional partnership. Although we have concluded Gary's professional training is a factor to be considered, we hold that a lump sum property settlement is inappropriate in the circumstances of this particular couple.

■ III. Susan also claims that the trial court's allowance of periodic payments to her is inadequate as to amount and duration. Under *Horstmann*, Gary's earning capacity is to be considered on the issue of alimony. Other things being equal and a lump sum being inappropriate here, substantial periodic alimony payments would be in order in this case over a considerable period of time, in view of the parties' six-teen-year marriage and Susan's contributions toward Gary's advancement.

At this point however two other factors enter the picture. One is that Susan already has an available occupation and is also in process of entering a profession herself. As Susan helped Gary enter his profession, however, he should now help her. On the other hand, she will probably develop substantial earning capacity of her own; she is not like the doctor's wife who has no remunerative calling of her own and probably will not develop one. Susan should thus receive substantial periodic alimony in the early years, but not for an extended period. As substantial earnings by physicians appear to arise earlier than for attorneys, the duration of the alimony should be longer than if the parties' roles were reversed and Susan were going into medicine.

The second factor is an argument by Gary that he lacks ability to pay substantial alimony even periodically because he is already heavily burdened with debt. We think Gary has his priorities askew. He is asking his former wife and his two children, altogether, to live on considerably less than he has for himself alone. Moreover, a large part of his payments are on principal; in effect he desires to improve his net worth at the expense of his dependents. In addition, the Winterset partnership is not the only place where he can practice his profession. If he has overloaded himself with debt there, perhaps he should consider withdrawing to other circumstances as one of his partners apparently did. Finally, upon close examination of the evidence we do not accept Gary's argument that his finances are as dire and his future is as bleak as he paints them. We are satisfied from the evidence that his financial prognosis is favorable. If he is not burdened with a large lump sum requirement, we cannot accept his argument that he cannot pay substantial periodic alimony for a period of time. Now that he has reached the threshold of financial affluence, a court of equity cannot permit him to walk away from the marriage without adequate provision for the family's material well being.

Placing the parts of the picture together and applying the factors enumerated in section 598.21 of the Iowa Code, we uphold all the terms of the trial court's decree except as follows. Gary is required to pay Susan $1000 per month for five years from the date of the decree and $500 per month thereafter for five additional years. The alimony payments shall terminate sooner upon Susan's death or remarriage. Delinquent installments of alimony or child support, in whole or in part, and whether they accrued heretofore or accrue hereafter, shall bear interest at 10% per annum from their respective due dates until paid.

Susan is granted $1500 from Gary to apply on her attorney fees for this appeal. Costs of appeal are assessed to Gary.

The district court is directed to enter a supplement to the decree on remand, in accordance with this opinion.

DECISION OF COURT OF APPEALS VACATED.

DECREE OF DISTRICT COURT MODIFIED AND AFFIRMED.

REMANDED.