In.re the MARRIAGE OF Elizabeth A. WAGNER and William E. Wagner.

Upon the Petition of Elizabeth A. Wagner, Petitioner–Appellant/Cross–Appellee,

And Concerning William E. Wagner, Respondent–Appellee/Cross–Appellant.

No. 87–808.

Court of Appeals of Iowa.

Nov. 29, 1988.

Jay H. Honohan of Honohan, Epley, Haymond & Braddock, Iowa City, for petitioner-appellant/cross-appellee.

Thomas H. Gelman of Phelan, Tucker, Boyle & Mullen, Iowa City, for respondent-appellee/cross-appellant.

Heard by HAYDEN, P.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

The parties, Liz and Bill Wagner, were married in 1977 and are the parents of one minor child. During the second half of their marriage Liz provided the majority of the family's income by working full-time as a nurse while Bill attended medical school. They separated in February 1985 and Liz filed for dissolution the next month, two months before Bill finished medical school. Stipulations by the parties resolved all questions of custody, child support, and the division of personal property. The main issue at trial was the amount Liz should receive for her role in supporting Bill through medical school and what form any such payments should take. The trial court decided on a $25,000 property award and alimony totaling $18,000, these amounts to be paid in progressively larger annual installments in keeping with Bill's potential for increased income.

Liz has appealed from this decree and Bill has cross-appealed. Liz contends, first, that the property settlement is too small. She urges the trial court erred by applying a restitution theory by which she would only be reimbursed for the amount she actually spent on Bill's medical education.

## I.

■ Our supreme court in *Horstmann* determined that an advanced professional degree does not itself constitute an asset of the parties for court consideration in making distribution upon dissolution of the marriage. *In re Marriage of Horstmann*, 263 N.W.2d 885, 891 (Iowa 1978). However, it is the potential for increase in future earning capacity made possible by the degree conferred upon the husband with the aid of his wife's efforts which is the factor to be considered when determining entitlement to an award.

In determining those capacities the court may consider the education, skill, or talent of both parties. *Id.; In re Marriage of Estlund*, 344 N.W.2d 276, 280 (Iowa App. 1983); *In re Marriage of Janssen*, 348 N.W.2d 251, 253 (Iowa 1984). "This statement of principle ... applies to the court's determination of an equitable distribution of assets and property...." *Horstmann*, 263 N.W.2d at 891.

■ The trial courts must also consider those factors listed under Iowa Code section 598.21(1) (1987). In this respect, we believe that where a dissolution occurs shortly after graduation, a traditional division of the marital property pursuant to statutory provisions would not yield an adequate or a fair return to the party who contributed towards the other party's medical degree. *See Washburn v. Washburn*, 101 Wash.2d 168, 677 P.2d 152, 158 (1984).

A number of reasons have been advanced as to why an educational degree is not itself an asset of the parties. The supreme court in *Horstmann* adopted the following reasoning from *Marriage of Graham*, 38 Colo.App. 130, 555 P.2d 527 (1976):

We recognize as stated by the Colorado Supreme Court in *Graham* that an educational degree "does not have an exchange value or an objective transferrable value on an open market". It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed, or pledged. An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual

achievement that may potentially assist in the future acquisition of property.

*Id.*

We turn now to the record. It reveals the following: At the time of the parties' marriage, petitioner had a two-year degree in nursing and respondent a four-year undergraduate degree. Bill first enrolled in dental college at the University of Iowa. In July of 1981, Bill commenced a four-year medical school program at the University. He worked as a teaching assistant for the Department of Anatomy during his first year of medical school. During the summer of that year of medical school, he worked as acting director of Laboratory Services at the University of Iowa Family Practice Clinic. Thereafter, he had no further employment until he commenced his residency program after the parties separated. He graduated from medical school on May 17, 1985 and did his first year of residency at a hospital in Virginia.

From the time Bill entered medical school until the parties separated on April 15, 1985, Liz worked full-time as a nurse and contributed all of her earnings to the family. Although Bill did not work after his first year of medical school he did receive money from his parents and also educational loans. In addition, he had income as a result of redemption of shares of a mutual fund that was gifted to him by his parents prior to his marriage. The record further reveals that the parties had some interest income and received $13,308.00 as a result of redemption of Liz's retirement plan and $740.00 as a result of redemption of Bill's retirement plan.

The cost of Bill's medical education including tuition fees, books, miscellaneous expenses and residency, search and travel expense, was estimated by Bill to be $20,000.00 or less. The actual charges made by the University of Iowa in connection with his medical education totaled $14,577.62.

The parties each made detailed calculations of their respective economic contributions during the medical school years as well as other sources of funding. Their testimony concerning their contributions was for the most part consistent. The trial court concluded that Liz's total share of the contributions during medical school years to the family and Bill's medical education was at least 65 percent and Bill's was at 35 percent. Liz's contribution, after application of Bill's own contributions during medical school for his support, his educational expenses, and Bill's one-half share of Lindsay's support, was in the range of twenty to twenty-five thousand dollars.

Liz asserts that the trial court erred when it awarded her but $25,000. She argues that this amount represents nothing more than a restitution for the money and effort expended by her towards Bill's medical education. She states that the court should have applied "future earning capacities" as expressed in the *Horstmann* decision.

The trial court found that the petitioner, in addition to the division of assets agreed to by stipulation, should be awarded a sum for her contributions to the respondent's medical education. It then entered an award of $25,000 to be paid at stated intervals. We find this to be consistent with *Horstmann*. The *Horstmann* court stated:

> The evidence establishes the cost of the education. While there are, of course, other methods that could have been used to establish the value of respondent's education, there is nothing incorrect about the approach used here. Petitioner has not cross-appealed the determination and is apparently satisfied with the amount of the award.

*Horstmann,* 263 N.W.2d at 891.

Even though the court in *Horstmann* allowed an award based on the cost of education, the court further recognized that where there is proper evidence, trial courts may consider an award based on the future earning capacities of the parties. In this respect, the court in *Horstmann,* after holding that an educational degree and the right to practice a profession in the state, do not "themselves constitute assets for distribution" stated,

... it is the potential for increase in future earning capacity made possible by the law degree and certificate of admission conferred upon the husband with the aid of the wife's efforts which constitute the assets for distribution by the Court.

*Id.*

■ Respondent essentially argues that, in the context of *Horstmann,* future earning capacity is an asset itself to which a value could be fixed and divided. We disagree. Under *Horstmann,* an educational degree is not itself an asset; nor do we believe that the potential of increased earning capacity is a property to be divided in value although, as illustrated in cases after *Horstmann,* it is a factor to be taken into consideration when determining whether alimony is appropriate and whether the property division is equitable.

■ There is no hard and fast rule that can be employed in resolving the problems before us, for each case must be decided on its own set of facts. Precedent is of little value but there are several cases since *Horstmann* that considered in part these problems.

We reviewed *Horstmann*–type issues in *In re Marriage of Estlund,* 344 N.W.2d 276 (Iowa App.1983), which involved a husband who obtained a law school education during the marriage. We there stated:

> The distribution of the property of the parties should be that which is equitable under the circumstances and after consideration of the criteria codified in Iowa Code section 598.21(1). The contributions of Petitioner towards Respondent's law degree, both as a homemaker and in her working to provide support, may be taken into consideration upon the issue of an equitable division of property.

*Id.* at 280. In *Estlund,* we upheld adjustments in the division of property which took into consideration the wife's contribution to the husband's education. No separate property award or alimony award was given.

The supreme court in *In re Marriage of Janssen,* 348 N.W.2d 251, 253–54 (Iowa 1984), in citing *Horstmann,* stated:

*Horstmann* thus held that a party's advanced degree is not a property to be divided in value, yet education is a factor to be considered on the party's earning capacity—and this is true not only on the issue of an "equitable division of assets" but also as to whether "alimony should be awarded and, if so, to the amount to be awarded."

The court went on to state:

> Under *Horstmann* the question before us is not *whether* [the husband's] training should be considered; manifestly it *is* a factor in the case and it is a significant factor because it substantially enhances [the husband's] earning capacity. The question in this case relates mainly to other factors which determine an equitable adjustment of the parties' finances inter se.

*Id.* at 254. Thus in *Janssen,* which was an alimony case and not a *Horstmann*–type case in a contribution sense, it was not merely the fact that petitioner attended school during the marriage or that respondent contributed to that education, but rather other relevant factors in the case which resulted in an award of alimony to the wife.

We next touched on the subject articulated in *Horstmann* in the case of *In re Marriage of Stewart,* 356 N.W.2d 611 (Iowa App.1984). That case involved the narrow issue of whether an additional award should have been given to the wife for the husband's education as a veterinary student obtained during the course of the marriage. We there held that under existing circumstances an award was not justified. We stated:

> [The husband's] veterinary degree has enhanced his earning capacity and it should be one factor to consider to determine whether alimony should be ordered and whether the property division is appropriate.

*Id.* at 613.

■ Our de novo review brings us to the conclusion that the award of $25,000 is justified under the facts and circumstances of this case. We determine that a lump

sum award based on the value, as an asset, of Bill's potential increase in earnings is improper. As stated, we hold that potential increase in earning capacity is not, in and of itself, the asset to which a value is fixed and then divided. It is a factor, however, that is to be considered under proper circumstances. Thus, we have considered the potential of future earning capacity as a factor when determining alimony under Division II of this ruling. Although we find the $25,000 amount justified, we modify the trial court's decree by awarding the petitioner 10% interest on the $25,000 and the balances owing from time to time from the date of the filing of the decree. Interest is to be paid on each principal payment date.

## II.

■■■■ Bill, on cross-appeal, contends the award of alimony should be overturned. He argues the traditional grounds for alimony are missing here because Liz gave up no employment opportunities and is admittedly fully capable of supporting herself.

In cases such as this dealing with alimony, we share the view articulated by the Supreme Court of Washington:

The trial court may consider the supporting spouse's contribution and exercise its broad discretion to grant maintenance, thereby in effect allowing the supporting spouse to share, temporarily, in the lifestyle which he or she helped the student spouse to attain.

*Washburn v. Washburn,* 101 Wash.2d 168, 677 P.2d 152, 158 (1984).

The applicable law in Iowa allows for the implementation of the above-cited view. As we set forth in Division I, a trial court in a dissolution case where proper evidence is presented may consider the future earning capacity of both parties and, in determining those capacities, it may consider the education, skill, or talent of both parties, and this statement of principle applies to the court's determination of whether alimony should be awarded and, if so, the amount to be awarded. *Horstmann,* 263 N.W.2d at 891. Education is a factor to be considered in the party's earning capacity. This is true as to whether alimony should be awarded and, if so, the amount to be

awarded. *Janssen,* 348 N.W.2d at 253–54. *See also In re Marriage of Stewart,* 356 N.W.2d 611 (Iowa App.1984); and *In re Marriage of Estlund,* 344 N.W.2d 276, 280 (Iowa App.1983).

Even though the alimony here is not made in the traditional sense, we must nonetheless measure the amount awarded by the ability to pay. We can use as a factor in determining that amount, Bill's potential for increased earning capacity.

Whatever factors are considered, we must take into account the effect the student spouse's contribution has on the overall circumstance. In this respect, we find the following taken from *Haugan v. Haugan,* 117 Wis.2d 200, 343 N.W.2d 796, 803–04 (1984), to be instructive:

... whatever factors that the trial court takes into account in determining the award to the supporting spouse, it must also take into account the student spouse's contribution and efforts in supporting the family and attaining the degree and efforts that will be expended in earning the enhanced income. The student spouse has worked hard to obtain the degree, will have to work hard to earn the future stream of income and should not be penalized. Granting equity to the supporting spouse should not result in inequity to the student spouse.

■■■ As indicated, Liz played a significant monetary role in Bill's medical education. In addition, she was both homemaker and primary caretaker for the parties' minor child. Her assumption of the multiple roles of primary breadwinner, homemaker, and mother allowed Bill to devote the bulk of his energies to medical school. Because the petition for dissolution was filed just prior to Bill's graduation from medical school, the parties have accumulated little marital property which is subject to division.

Bill's medical residency income at the time of trial was $22,000 a year with assured salary increases of $1,000 on July 1, 1987, and a like amount on July 1, 1988. Bill testified that the starting salary for an OB–GYN specialist in the office in which his father is a senior member is $50,000 to $55,000 per year. Liz's present salary as a

holder of a five-year nursing certificate is $2,093.94 a month.

Based on the above, and using as a factor Bill's potential for increased earnings, we conclude that Liz is deserving of more alimony than awarded by the trial court. Accordingly, we modify the amount of alimony by requiring monthly payments of $400 a month from August 1, 1994, through July 31, 1998. This is in addition to the alimony already awarded by the trial court. We believe, under the particular circumstances here, that the alimony payments provided for shall terminate only upon the death of either party or at the time final payment is made.

### III.

Bill seeks to overturn Liz's award of attorney fees. Attorney's fees are not recoverable as a matter of right, but rest within the trial court's discretion and depend upon one spouse's financial needs and the other spouse's ability to satisfy them. *In re Marriage of Orgren*, 375 N.W.2d 710, 714 (Iowa App.1985). We find no reason in the record to overturn the trial court's award of attorney's fees to Liz.

AFFIRMED AS MODIFIED.