In re MARRIAGE OF Alexis Carole
BERGER and Richard
Allen Berger.

Upon the Petition of Alexis Carole
BERGER, Petitioner–Appellee,

v.

Richard Allen BERGER,
Respondent–Appellant.

No. 87–1748.

Court of Appeals of Iowa.

Aug. 24, 1988.

As Modified Sept. 2 and Dec. 8, 1988.

Daniel L. Bray, Iowa City, for respondent-appellant.

Sharon A. Mellon, Iowa City, for petitioner-appellee.

Considered by SCHLEGEL, P.J., and HAYDEN and SACKETT, JJ.

SCHLEGEL, Judge.

Respondent, Richard Allen Berger, appeals several provisions of the decree entered in the dissolution of this ten-year marriage. He complains that: (1) the court should not have ordered alimony for petitioner, Alexis Carole Berger; (2) the court should not have awarded Alexis attorney fees; (3) the court should not have fixed post-high school child support for their seven-year-old daughter; and (4) the court should not have awarded Alexis a $100,000 judgment. We affirm as modified.

Because the issues are singularly interrelated, we review the award of judgment and alimony together.

The parties were married on June 4, 1977. They have one child, Andrea, born April 7, 1981. At the time of trial in May 1987, Richard had completed his third year of a five-year medical research residency. Richard expects to complete his residency in July 1989, at which time he will begin two years of post-graduate research-oriented fellowship. Richard's goal is to engage in medical and anatomical research. Alexis completed her B.A. degree in studio art in 1981. At the time of trial, she was a part-time student at the University of Iowa and had completed eleven hours toward a teaching certificate. She planned to receive her teaching certificate in May 1988. For the most part, Alexis was employed regularly during the parties' marriage.

The district court determined that Alexis' contribution to Richard's degrees and his ultimate certificate to practice medicine had a value of $100,000. Based upon that finding, the district court awarded Alexis a judgment in the amount of $100,000, to commence drawing interest at the rate of ten percent per annum on July 1, 1989, contemporaneous with an obligation to make an initial payment of $10,000. On July 1 of each year thereafter, the court ordered Richard to pay $10,000 plus interest until the entire judgment is satisfied in full. In addition, the court ordered Richard to pay $300 per month in alimony commencing December 1, 1987, and continuing through July 1, 1989. The expressed purpose in awarding such alimony was to permit Alexis to complete her education and to assist her in transition to a regular teaching job. Thereafter, the court ordered the payment of alimony of $1 per year, terminable on the death of either party or upon Alexis's remarriage.

The trial court, in addressing the subject of compensation for Alexis's contributions to Richard's career, stated:

> The degree and education obtained by Richard are not property. *In re Marriage of Horstmann*, 263 N.W.2d 885, 891 (Iowa 1978); *In re Marriage of Graham*, [194 Colo. 429], 574 P.2d 75, 77 (1978).

> The Iowa Supreme Court recognizes, however, that *an increase in future earning capacity is an asset for division. In re Marriage of Horstmann*, 263 N.W.2d 885, 891 (emphasis added).

Accordingly, the trial court determined that the increase in future earning capacity, in

and of itself, possessed a value and constituted a divisible asset.

To the extent that the trial court based its decree upon its perception that the Iowa courts consider an advanced degree an *asset for division,* it misunderstands the holding of *Horstmann.* As is made quite clear by *Horstmann* and subsequent cases:

> [A] party's advanced degree is not a property to be divided in value, yet education is a factor to be considered on the party's earning capacity—and this is true not only on the issue of "an equitable division of assets" but also as to whether "alimony should be awarded and, if so, to the amount to be awarded."

\* \* \* \* \* \*

Under *Horstmann* the question before us is not *whether* Gary's training should be considered; manifestly it *is* a factor in the case and it is a significant factor because it substantially enhances Gary's earning capacity.

*In re Marriage of Janssen,* 348 N.W.2d 251, 254 (Iowa 1984). *See also In re Marriage of Estlund,* 344 N.W.2d 276, 280 (Iowa App.1983).

In *Janssen,* the court noted that it is proper to recognize a spouse's contribution to the other spouse's enhanced earning capacity in the determination as to whether alimony should be awarded and if so, how much and for how long. 348 N.W.2d at 254. It is also proper to require that the recipient of that contribution may not, through neglect or design, deprive the donor of reasonable contributions. On the other hand, although there may be evidence that a person with superior education, talent and training can earn an extremely large income, courts may not, in decrees of dissolution, assume or require that either party will produce such incomes. *In re Marriage of Griffin,* 356 N.W.2d 606, 609 (Iowa App.1984).

In the case at bar, Richard's stated desire is to pursue a career in medical research, in which a large part of the compensation is in the nature of satisfaction of having helped the advancement of medical science and the improvement of the health and condition of society. Under the circumstances known in this record, we cannot assume that Richard will pursue a highly compensatory practice of medicine, because the less compensatory career he espouses seems, at the present, to be his goal. Since the opportunity to earn a large income is also within his reach, should he desire that direction for his career, our decision should not estop Alexis from sharing in that greater bounty whenever Richard selects that change in course.

The testimony of the experts presented by the parties, while interesting, is not very helpful in determining an equitable division of property or the amount or propriety of alimony. The variation of values testified to, from $121,419 to $476, demonstrates that much of that testimony depends upon the assumptions made and on whose behalf they are being made. As $600 per month for a period of eight years for child care in a home provided by both parties seems unrealistic in the determination of Alexis's contribution, $476 as the present value of her interest in Richard's future earnings is ludicrous. One can hope that the language in *Horstmann* will not be seen as creating a need for competing economists to speculate upon future earnings in dissolution cases involving persons with advanced degrees. Such hopes and aspirations depend upon intangible matters such as the continued ambition of the educated member of the marriage, the availability of employment, the desires of the professional as to the exercise of his or her acquired talent, and his or her continued good health. Anything more than the acknowledgement that such an asset as an advanced degree potentially portends a greater bounty, and a commitment that such an expectation should enhance the ability of the one who possesses that asset to be more generous in the division of existing assets and more able to pay alimony, constitutes mere speculation. Any such speculation is likely to create a difficult situation.

Since there have been few if any assets accumulated in this marriage, and virtually no cash is available for the payment of any lump sum distribution to Alexis, the award of a judgment of $100,000 is not a realistic

solution to the problem presented by this case. Upon the record in this case, we hold that the trial court was correct in awarding Alexis alimony in the amount of $300 per month from the time of the decree until July 1, 1989. The amount of child support awarded by the court has not been challenged by Richard on this appeal. Both the child support as awarded by the court and the alimony ordered are affirmed.

We modify the decree rendered by the trial court by striking the judgment in the amount of $100,000, and all provisions for its payment. In this case, a lump sum payment is not called for, and its consequences might well place Richard in the position that he must abandon his chosen professional field. The trial court's effort to compensate Alexis for her contribution to Richard's career goals may have created a situation where Richard will have little choice—and the ability—to discharge that obligation without payment.

The better solution is to pursue Alexis's compensation by providing for the continuation of alimony, and providing for its review, in the event Richard's career goals change.

We order that on August 1, 1989, the alimony payable to Alexis shall increase to $500 per month, and it shall be payable at that rate for a period of ten years. The alimony thus provided for shall terminate only upon the death of either of the parties or at the end of the ten-year period. The rate of alimony is set based upon the finding that Richard, at the end of his present residency, will have the ability to obtain the type of research and teaching career that

he seeks. Should he elect to enter into the clinical practice of medicine, with a concurrent increase in earnings, such facts would be a change in the circumstances considered by this court in determining the rate of alimony.

We affirm the trial court's award of child support, and affirm its provision of the continuation of such child support past age 18, in the event Andrea meets the qualifications of Iowa Code section 598.1(2) (1987).

The trial court did not abuse its discretion in awarding attorney fees to Alexis. She seeks attorney fees on appeal. We decline to order additional amounts to be paid to her to apply upon those fees. The costs of this appeal shall be taxed fifty percent to each party. The parties shall pay their own attorneys.

AFFIRMED AS MODIFIED.

HAYDEN, J., concurs.

SACKETT, J., specially concurs and dissents.

SACKETT, Judge (concurring in part and dissenting in part).

I agree with the majority in all respects except I would order the alimony not terminate on remarriage.