In re the MARRIAGE OF Tamara
Swartz JENNINGS and Kyle
L. Jennings.

Upon the Petition of Tamara Swartz
Jennings, Petitioner–Appellee,

and concerning Kyle L. Jennings,
Respondent–Appellant.

No. 89–897.

Court of Appeals of Iowa.

Feb. 22, 1990.

As Amended Feb. 26, 1990.

Thomas M. Zurek of Smith, Schneider, Stiles, Mumford, Schrage & Zurek, P.C., Des Moines, for respondent-appellant.

Thomas T. Tarbox of Wimer & Hudson, P.C., Des Moines, for petitioner-appellee.

Considered by DONIELSON, P.J., and SACKETT and HABHAB, JJ.

SACKETT, Judge.

Respondent-appellant Kyle L. Jennings appeals a decree dissolving his marriage to petitioner-appellee Tamara Swartz Jennings. Kyle contends (1) the alimony awarded by the trial court is excessive and for too long a period of time, (2) the child support award is inequitable, (3) the property award is inequitable, and (4) attorney fees should not have been awarded. We affirm as modified.

The parties were married in June 1984 and have one child, Margaret, born in May 1986. When they married, Tamara held a B.A., was working to be certified in teaching learning disabilities, and held a full-time teaching position in a public school. Kyle was an undergraduate at Iowa State University and was employed part-time. After graduating from Iowa State, he pursued a degree at Drake Law School. He graduated from Drake in May 1988.

Both parties brought some assets to the marriage. During the marriage both parties pursued additional education. Tamara taught in the public school system and her earned income exceeded Kyle's, who worked primarily as a law clerk. Kyle's parents paid his tuition at Drake Law School, except for his final year, when he served as Editor in Chief of the Drake Law Review, with a resulting full-tuition scholarship. The couple received substantial cash gifts from each family. While Tamara's earnings exceeded Kyle's, the cash gifts from Kyle's family exceeded those from Tamara's family.

The parties' respective cash contributions were:

|  | Kyle | Tamara |
|---|---|---|
| Brought into marriage | $ 9,500 | $ 4,400 |
| Earnings | 33,670 | 65,000 |
| Gifts from family | 49,273 | 7,000 |
|  | $92,443 | $76,400 |

At the time of the dissolution, Kyle was earning $35,000 as an associate in a Des Moines law firm. Tamara was working half-time as a teacher in the Woodward–Granger school district and earning about $10,000 annually. It was agreed, with her education, she could expect to earn $20,000 for teaching at a public school in the Des Moines area.

The trial court divided the assets of the parties in the following manner:

| Tamara | | Kyle | |
|---|---|---|---|
| Home Equity | $16,000 | Furniture | $1,000 |
| Furniture | 4,000 | Oldsmobile auto | 4,000 |
| China/Crystal | 1,500 | Tax Refund | 800 |
| Jewelry | 500 | | $5,800 |
| IPERS | 3,000 | | |
| IRA | 2,000 | | |
| Ford auto | 1,000 | | |
| Tax Refund | 800 | | |
| | $28,800 | | |
| Pmt. ordered from Kyle | 5,000 | Pmt. to Tamara | (5,000) |
| | $33,800 | Tamara's atty. fees | (2,500) |
| | | | ($1,700) |

The trial court decree left Tamara with a net worth of $33,800 and Kyle with an obligation of $1,700 in excess of assets.

Kyle was ordered to pay Tamara alimony of $300 per month for three years. Kyle was ordered to pay child support of $600 per month from June 1, 1989, to May 1, 1992, $700 per month from June 1, 1992, to May 1, 1995, and $1,000 per month from then on, with a reduction of two-thirds during extended summer vacations starting in 1990. Kyle was to carry medical insurance and a $125,000 life insurance policy on his life for the benefit of the child. He also was ordered to pay one-half of any uninsured health expense. He was given the child dependency credit.

The trial court, in making the award, placed considerable emphasis on the fact that Kyle did an excellent job in law school, he has a good job with a Des Moines firm, and the future will bring substantial increases in his income.

## I.

■ Kyle contends the alimony and property awards are inequitable. We consider alimony and property division together in assessing their sufficiency. *In re Marriage of Dahl*, 418 N.W.2d 358, 359 (Iowa 1987). This is a short-term marriage. Neither party has made substantial personal sacrifices. Kyle obtained more education during the period, but his basic educational expenses were paid by his family. Tamara had more earned income than Kyle, but in considering the additional monies he brought into the marriage, as well as the gifts from his family (in addition to tuition payments), his financial contributions exceeded those of Tamara and her family. The parties have experienced a good standard of living during Kyle's law school years because of Tamara's contribution, their families' contributions, and Kyle's part-time employment.

Tamara has also assumed primary custodial responsibility for the parties' child. She will do so in the future. Tamara leaves the marriage with substantial education and good employment opportunities in the education field. She currently has the ability to earn $20,000 annually. Kyle leaves the marriage with substantial education, good employment opportunities in the field of law, and the current ability to earn $35,000 annually.

Kyle argues these factors do not justify an award that gives Tamara all of the parties' net worth and incumbers Kyle's future earnings to pay a property settlement and alimony. We assess the issue under the dictates of applicable cases. See *In re Marriage of Francis*, 442 N.W.2d 59 (Iowa 1989); *In re Marriage of Janssen*, 348 N.W.2d 251 (Iowa 1984); *In re Marriage of Horstmann*, 263 N.W.2d 885 (Iowa 1978); *In re Marriage of Stewart*, 356 N.W.2d 611 (Iowa App.1984). These cases generally hold insofar as an advanced degree creates an expectancy of higher earnings, the degree may be taken into account in calculating future earning capacity, *Francis*, 442 N.W.2d at 62; *Janssen*, 348 N.W.2d at 253–54; *Stewart*, 356 N.W.2d at 612–13, and while not a property right, can be considered on the issue of both alimony and property division. *Janssen*, 348 N.W.2d at 253; *Horstmann*, 263 N.W.2d at 891.

■ The sacrifices made by Tamara toward Kyle's advanced degree were considerably less than the sacrifices made to the spouses' advanced degrees in *Janssen*, 348 N.W.2d at 252, and *Francis*, 442 N.W.2d at 64–65. Also, the parties here accumulated the nearly $40,000 net worth in a large part because of the substantial monetary contributions made by Kyle's parents and to a lesser extent because of contributions by Tamara's parents. The contributions made by Kyle's parents were more than sufficient to pay his educational and living expenses. Iowa Code section 598.21(2) (1989) provides that gifted or inherited property should be set aside to the recipient of the gift or inheritance unless it is inequitable to do so. Under the circumstances, we consider it inequitable to set aside to Kyle the amount by which his family's contributions exceed those of Tamara's family. We do consider these contributions in assessing Tamara's claim for alimony and her claim that she should receive substantially more property than Kyle because he received a law degree during the marriage. *See also In re Marriage of Thomas*, 319 N.W.2d 209, 211 (Iowa 1982).

We determine the factors here support a modification of the alimony and property awards. We agree with the trial court that Tamara should leave the marriage with more assets than Kyle does. Because there are assets here that can accomplish that purpose, we determine it is better to settle the inequities at this time with property. We therefore modify the decree to eliminate the alimony award.

We further modify the decree to eliminate the requirement that Kyle pay an additional amount to Tamara of $5,000, and that he pay $2,500 toward her legal fees. In all other respects, we affirm the property award. Therefore, Tamara will leave the marriage with approximately $33,800 in property and Kyle will leave the marriage with $5,800 in property. They each will be responsible for their own attorney fees.

## II.

■ Kyle contends the child support award is too high. Since September 29, 1989, the courts in this state have been required to apply support guidelines in fixing child support. The decree in this matter was entered May 8, 1989. Because the guidelines were adopted between the time of this dissolution decree and the time the case was transferred to us for submission, we do not have the benefit of the trial court's computation of child support under the guidelines.

Tamara has an annual income of $10,000. Kyle has an annual income of $35,000. We will make the necessary computations to arrive at net income as defined by the guidelines. Net monthly income under the guidelines means gross monthly income less deductions for:

(1) Federal Income Tax
(2) State Income Tax
(3) Social Security Deductions
(4) Mandatory Pension Deductions
(5) Union Dues
(6) Dependent Health Insurance Coverage
(7) Individual Health/Hospitalization Coverage or Medical Expense Deductions not to exceed $25.00 a month

Other items, such as credit union payments, charitable deductions, savings or thrift plans and voluntary pension plans, are to be added back into a parent's income, since the needs of the children must have a higher priority than voluntary savings or payment of indebtedness.

Kyle

Step (1) computation of federal tax:

$35,000
  (2,000)  personal exemption
  (2,000)  dependent exemption
  (3,850)  deduction in lieu of itemizing
$27,150  to apply to tax table for federal tax of $5,198

Step (2) computation of state tax:

$35,000
  (5,198)  federal tax
$29,802

  Tax table: $1,819
           35  (exemptions:
      $1,784  $20 for self, $15 for dependent)

Step (3) computation of FICA deduction:

$35,000 × 7.51% = $2,629 FICA

Step (4) subtract federal/state/FICA:

$35,000
  (5,198)  federal tax
  (1,784)  state tax
  (2,629)  FICA
$25,389

Step (5) determines monthly amount:
$25,389 divided by 12 = $2,116

Tamara

Step (1) computation of federal tax:
$10,000
2,000 personal exemption
3,850 deduction in lieu of itemizing
_____ federal tax is $629
$4,150

Step (2) computation of state tax:
$10,000
629 federal tax
$ 9,371

Tax table $337
20 exemption for self
$317

Step (3) computation for FICA:
$10,000 × 7.51% = $751

Step (4) subtract federal/state/FICA:
$10,000
629
751
317
$ 8,303

Step (5) determines monthly amount:
$8,303 divided by 12 = $692

No deductions are taken for dependent health insurance or personal health insurance because, although Kyle is ordered to pay health insurance on the child, we do not have the amount.

Chart shows: For one child:

Custodial (601–700)
Noncustodial (over 1,000) = 20.4%
$2115
× 204
431460 = $431.46

In accordance with the guidelines, the support is reduced to $431.46 monthly.

■ We consider it equitable to require Kyle to continue to pay, in addition to this support, Margaret's medical insurance and all medical and dental expenses not covered by insurance. We strike the requirement that he carry $125,000 in life insurance payable to Margaret. Kyle earns wages subject to FICA withholding. In the event of Kyle's death, social security benefits will be available to Margaret during her minority. *See In re Marriage of Lovetinsky,* 418 N.W.2d 88, 90 (Iowa App.1987).

■ We strike that portion of the decree that automatically increases the child support. We cannot speculate as to future income for child support purposes. *See In re Marriage of Mentel,* 359 N.W.2d 505, 507 (Iowa App.1984). We also strike that portion of the decree that decreases the support during summer visitation.

AFFIRMED AS MODIFIED.

DONIELSON, P.J., concurs.

HABHAB, J., concurs in part and dissents in part.

HABHAB, Judge (concurring in part, dissenting in part).

I respectfully dissent from that portion of the majority opinion that eliminates the alimony award to Tamara. I would find Tamara is entitled to reimbursement alimony in the form of $300 per month for thirty-six months. *See In re Marriage of Francis,* 442 N.W.2d 59, 66 (Iowa 1989). It should not go unnoticed that during virtually the entire marriage Kyle was a full-time student either at Iowa State University or Drake University. While most of the expenses for Kyle's education were paid for by his parents, the Iowa Supreme Court has noted that "courts in Iowa are not confined to reimbursing supporting spouses solely for the expense of the advanced degree itself." *Id.* The purpose of reimbursement alimony is to compensate the supporting, nonstudent spouse for both having endured a lower standard of living during the marriage in order that the student spouse may further his or her education and also for being deprived of a better standard of living in the future. *See Mahoney v. Mahoney,* 91 N.J. 488, 501, 453 A.2d 527, 534 (1982). Kyle's vastly-increased earning potential, which was acquired in no small part through the support of Tamara, requires compensation to Tamara to a greater degree than the majority allots.