**In re the MARRIAGE of Steven V. TITTERINGTON and Sharon Sue Titterington.**

**Upon the Petition of Steven V. Titterington, Petitioner–Appellee/Cross–Appellant,**

**And Concerning Sharon Sue Titterington, Respondent–Appellant/Cross–Appellee.**

No. 91–743.

Court of Appeals of Iowa.

April 28, 1992.

John L. Sandy, Spirit Lake, for appellant.

Patrick M. Carr of Zenor & Carr, Spencer, for appellee.

Heard by DONIELSON, P.J., and SCHLEGEL and HAYDEN, JJ.

DONIELSON, Presiding Judge.

Steven and Sharon Titterington were married in 1972 and had four children. In August 1988, the district court dissolved the parties' marriage and granted them joint custody of the children. The dissolution decree placed the children in Sharon's physical care and ordered Steven to pay child support in the amount of $500 per month ($125 per child).

Both parties have remarried. Sharon is employed as a receptionist and works approximately thirty hours per week earning five dollars per hour. Her net annual income is $6,302.40. Steven is an employee of Titterington, Inc., a family farm corporation he owns with his father and brother. His net annual income is $16,129.

Two years after the dissolution decree was entered, Scott Titterington, who at age fifteen is the parties' oldest child, expressed a desire to reside with his father. Prompted by his son's desire, Steven filed a petition to modify the child custody and support provisions of the parties' dissolution decree. The petition asserted Scott's expressed desire to reside with Steven constituted a material and substantial change of circumstances warranting modification of the original decree. Steven requested he be granted Scott's physical placement and asked that his child support obligation be reduced to $375 per month.

Sharon's answer denied that Scott desired to live with Steven. She denied any material change of circumstances had occurred and requested Steven's modification petition be dismissed. She also filed a discovery request to produce copies of Titterington, Inc.'s income tax returns for the years 1987 through 1990.

Trial on Steven's modification petition was held on April 4, 1991. At the close of evidence, Sharon requested leave of court to amend her answer. She wished to: (1) admit a material change in circumstances warranting modification of the decree to change Scott's physical custody from Sharon to Steven; (2) request a modification of Steven's child support obligation applying the child support guidelines; and (3) seek attorney fees. Steven resisted Sharon's motion.

On April 24, 1991, the district court issued its ruling on Steven's modification petition and Sharon's motion to amend. The district court transferred Scott's placement to Steven and granted Sharon's motion to amend, finding a substantial change in circumstances warranting a modification of Steven's child support obligation. The court increased Steven's support obligation for the three children remaining in Sharon's care to $531 per month ($177 per child per month). The court also ordered Sharon to pay ninety-five dollars per month to Ste-

ven for Scott's support. Finally, the district court granted Sharon a $2800 judgment against Steven for her trial attorney fees.

Sharon appeals and Steven cross-appeals from this ruling. Sharon's primary challenge concerns the court's calculation of Steven's net annual income at $16,129. This figure, she argues, is an inaccurate measure of Steven's actual net income for purposes of determining his child support obligation. She contends the court should have included in Steven's net income certain valuable perquisites he receives from his ownership interest in Titterington, Inc. She further contends the court erred in deducting state and federal taxes from Steven's income. According to Sharon, Steven's income equals $24,141 when properly calculated. Therefore, Sharon argues, Steven's child support obligation, as generated by the guidelines, should be $790.72 per month.

Alternatively, Sharon requests her ninety-five dollar per month support obligation be eliminated or reduced. She argues the district court erred in considering her new husband's income when setting this obligation. Finally, she requests an award of appellate attorney fees and additional trial attorney fees.

On cross-appeal, Steven challenges several provisions of the district court's modification decree. He contends the court should not have allowed Sharon to amend her pleadings after the close of evidence. He disputes the court's conclusion an increase in his child support obligation is warranted. Finally, he challenges the court's award to Sharon of trial attorney fees.

In this equity action, our review is de novo. Iowa R.App.P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the trial court's factual findings, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R.App.P. 14(f)(7). On our re-

view, we affirm all aspects of the trial court's modification decree.

I. Steven's Child Support Obligation. Sharon first argues the trial court erred in setting Steven's child support obligation. She contends the award is based on an inaccurate income figure and is, therefore, inadequate. We disagree and affirm the trial court.

Certainly, Steven has a legal obligation to support his children, *see In re Marriage of Fleener*, 247 N.W.2d 219, 221 (Iowa 1976), and the amount of that obligation should be determined in light of each parent's ability to contribute. *See In re Marriage of Bornstein*, 359 N.W.2d 500, 504 (Iowa App.1984). Each parent's ability to contribute must be determined using the child support guidelines. *See In re Marriage of Powell*, 474 N.W.2d 531, 533 (Iowa 1991). In applying the guidelines, we must first determine each parent's net monthly income. *See In re Marriage of Lalone*, 469 N.W.2d 695, 696 (Iowa 1991). Under the guidelines, "net monthly income" is defined as gross monthly income less certain enumerated deductions. *See In re Marriage of Jennings*, 455 N.W.2d 284, 287–88 (Iowa App.1990). Sharon earns a net monthly income of $525.20. Steven's net monthly income for the purpose of applying the guidelines is more difficult to ascertain.

As an employee of Titterington Inc., Steven earns a gross annual salary of $14,344. In addition to his salary, the company compensates Steven with certain valuable benefits. The record demonstrates the company pays for: (1) his real estate loan payments ($3331 annually); (2) his real estate taxes and insurance, occasionally ($700 annually); (3) his heating fuel, occasionally during the winter ($370 annually); his personal gasoline and other vehicle expenses ($500 annually). Therefore, Steven's gross annual income is $19,245. Subtracting $3116 in FICA and federal and state taxes, the trial court found Steven's net annual income is $16,129; his net monthly income is $1344.08.

We believe the trial court correctly determined Steven's net income for the

purpose of calculating his child support obligation. The benefits or perquisites he receives were properly valued by the trial court and were properly included in Steven's net income. The trial court correctly added only the after-tax value of these benefits to Steven's net salary to arrive at his total net income.

■ Sharon contends other benefits should have been included in Steven's income as well. We disagree. The company has paid the premiums on two cross-coverage life insurance policies since 1981. Both brothers, Steven and Tim, own and are the beneficiaries of these policies which insure the other brother's life. The policies were originally purchased, at the behest of the company's lender, to provide each brother with the funds necessary to buy the other's share of the corporation in the event he died. The annual value of the premiums paid by the company on Steven's policy is $3828.30. The value of the premiums on Tim's policy totals $4843 annually. Steven's policy builds a cash value of $2750 per year, and Tim's builds $3750. Ninety-two percent of the cash value of Steven's policy has been borrowed by the company to pay its corporate state income tax liabilities.

Sharon contends the court should have included the value of the premiums for Steven's policy in Steven's income. We are unpersuaded. We believe the proper inquiry in determining if the premiums should be included in Steven's income is whether the company would be willing to pay Steven the value of the premiums in wages or salary without requiring he spend the sums for a policy insuring the life of his brother. We are not persuaded the company would be amenable to such a plan, and therefore, we affirm the trial court's refusal to add the premiums to Steven's income.

The economic benefits of the cross-coverage insurance scheme inure in part to the corporation by making the company more attractive to lenders. In fact, the company's lender required such an insurance scheme before it would lend to the company. Both brothers, as owners of the policies, are benefitted by the policies as well. The benefit to each brother is twofold. First, each brother is entitled to the proceeds of the policy upon the other's death. Second, each brother, as owner of a policy, may borrow against its cash value.

However, we must focus on the company's interests. Unless the benefit to the company is less valuable than the price of the policies (the premiums), we do not believe the company would be amenable to paying any portion of the value of the premiums directly to Steven and Tim in the form of unrestricted wages or salary. Unless Steven were afforded such a choice, it would be inequitable to include the premiums in calculating his income.

Sharon has not demonstrated the value of the benefit which the policies afford to the company. Sharon has made no showing of the cost the company would incur were it not for the insurance-created ownership stability. It is within the range of possibility the company would be altogether unable to borrow. It is also possible the cost to the company would be a negligible increase in the rate of interest necessary to secure a loan. Of course, we decline to speculate. Because such a showing has not been made, we will not include the premiums in the computation of Steven's income. We are not persuaded the company would be interested in paying the premiums to Steven in the form of wages or salary. Therefore, we believe the trial court properly calculated Steven's net income for the purpose of determining his child support obligation.

On cross-appeal, Steven, too, challenges the trial court's increase in his child support payments. He presents two arguments for the position that, as a noncustodial parent of three children and a custodial parent of one, he should not be required to pay more support than he was required to pay as a noncustodial parent of four children. Unpersuaded by his arguments, we affirm.

■ Steven first argues the trial court erred in granting Sharon leave of court to amend her pleadings at the close of her evidence. Trial courts have broad discre-

tion in ruling on motions for leave of court to amend pleadings. *See Bennett v. City of Redfield,* 446 N.W.2d 467, 474 (Iowa 1989). Motions for leave to amend pleadings to conform to the proof are to be freely granted when justice requires. Iowa R.Civ.P. 88. Such motions should not be granted on the eve of trial or later when the amendment to the pleadings will substantially alter any issue involved in the case. *See Beneficial Finance Co. v. Reed,* 212 N.W.2d 454, 456 (Iowa 1973). Our inquiry in determining the propriety of the trial court's decision must, therefore, focus on whether Sharon's amended pleadings substantially changed the issues. We find no abuse of the trial court's discretion.

■ Steven placed the level of child support in issue. Sharon exercised discovery requesting information regarding Steven's present financial condition. He cannot reasonably claim to have been surprised to his prejudice by Sharon's amendment requesting Steven's support obligation be increased. Neither do we believe Steven was surprised by Sharon's request for attorney fees. From our review of the record, we are unable to find a motion for continuance filed by Steven in an attempt to remedy any alleged surprise. We affirm the trial court's decision to allow Sharon leave of court to amend her pleadings.

■ Steven next argues Sharon failed to show a material and substantial change in circumstances has occurred since entry of the original decree. A dissolution decree may be modified only when there has been a material and substantial change in the parties' circumstances since entry of the original decree. *Mears v. Mears,* 213 N.W.2d 511, 514–15 (Iowa 1973). "The trial court has reasonable discretion in determining whether modification is warranted and that discretion will not be disturbed on appeal unless there is a failure to do equity." *In re Marriage of Kern,* 408 N.W.2d 387, 389 (Iowa App.1987) (citing *In re Marriage of Vetternack,* 334 N.W.2d 761, 762 (Iowa 1983)).

The principles enumerated in *Vetternack* and applied in *Kern* are applicable here as well:

A number of principles emerge from our cases: (1) there must be a substantial and material change in the circumstances occurring after the entry of the decree; (2) not every change in circumstances is sufficient; (3) it must appear that continued enforcement of the original decree would, as a result of the changed conditions, result in positive wrong or injustice; (4) the change in circumstances must be permanent or continuous rather than temporary; (5) the change in financial conditions must be substantial; and (6) the change in circumstances must not have been in the contemplation of the trial court when the original decree was entered.

*Vetternack,* 334 N.W.2d at 762.

■ While the adoption of the October 16, 1990, child support guidelines does not, standing alone, constitute a change in circumstances, if the trial court finds changed circumstances for other reasons, the court shall employ the new guidelines in setting the new level of support. *See In re Marriage of Bergfeld,* 465 N.W.2d 865, 869–70 (Iowa 1991). It was Steven who filed the modification petition alleging the existence of a material and substantial change in circumstances warranted the transfer of Scott's physical placement. This transfer of placement surely constitutes a material and substantial change in circumstances warranting a reexamination of the child support provisions of the original decree as well. In setting Sharon's support payments and resetting Steven's, the trial court properly considered the new child support guidelines. We affirm on this issue.

II. *Sharon's Child Support Obligation.* Sharon contends the trial court erred in considering her new husband's income in setting her child support obligation of ninety-five dollars. We do not believe the trial court did consider her husband's income.

Sharon's net monthly income is $525. For the purpose of calculating her child support obligation, she is Scott's noncustodial parent. Steven's net monthly income is $1344. He is Scott's custodial parent. Using these facts and figures, the child

support guidelines dictate 18.1 percent of Sharon's income equals her support obligation. 18.1 percent of $525 equals ninety-five dollars. This amount is generated using Sharon's income without regard to that of her new husband. We affirm.

 III. Trial Attorney Fees. Sharon requests an additional award of trial attorney fees, and Steven challenges the existing award. Iowa trial courts have considerable discretion in awarding attorney fees. *In re Marriage of Giles*, 338 N.W.2d 544, 546 (Iowa App.1983). To overturn an award, the complaining party must show that the trial court abused its discretion. *Id.* Awards of attorney fees must be for fair and reasonable amounts, *In re Marriage of Willcoxson*, 250 N.W.2d 425, 427 (Iowa 1977), and based on the parties' respective abilities to pay. *In re Marriage of Lattig*, 318 N.W.2d 811, 817 (Iowa App. 1982). We affirm the trial court's award.

 IV. Appellate Attorney Fees. Finally, Sharon requests an award of appellate attorney fees. An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial positions. *In re Marriage of Kern*, 408 N.W.2d 387, 390 (Iowa App. 1987). We are to consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. *In re Marriage of Castle*, 312 N.W.2d 147, 150 (Iowa App.1981). We order each party is responsible for his or her own appellate attorney fees.

The costs of this appeal are taxed equally between the parties.

For all the reasons stated, the judgment of the district court is affirmed.

AFFIRMED.