**In re the Marriage of Laura L. McQUEEN and Scott A. McQueen,**

**Upon the Petition of Laura L. McQueen, Petitioner–Appellant,**

**And Concerning Scott A. McQueen, Respondent–Appellee.**

No. 91–1353.

Court of Appeals of Iowa.

Sept. 29, 1992.

Mark R. Crimmins and Kurt L. Wilke of Bennett, Wilke & Crimmins, Fort Dodge, for petitioner-appellant.

Dan T. McGrevey, Fort Dodge, for respondent-appellee.

SACKETT, Judge.

This is an appeal challenging the economic provisions of a dissolution decree dissolving a ten-year marriage.

Petitioner-appellant Laura L. McQueen and respondent-appellee Scott A. McQueen were married in 1981. They have a daughter and a son born in 1984 and 1987, respectively. At the time of dissolution, both parties were thirty-five years old and in good health.

At the time of marriage, Scott had graduated from college and Laura was a registered nurse, but they had few assets. At the time of dissolution, through their joint efforts, Scott and Laura had accumulated about $160,000 in net worth. At the time of dissolution, Scott was working as district agent for Northwestern Mutual Life Insurance Co. and Laura was employed part-time as a nurse.

The parties agreed to joint custody of the two children with Laura receiving physical care.

The trial court denied Laura's request for alimony. The trial court allocated the assets and in addition ordered Scott to pay Laura $25,000 payable at $5,000 per year.

The trial court found Scott's net monthly income based on an average adjusted income for four years to be $4,211, and Laura's income to be $590. The trial court ordered Scott to pay child support of $1,385 per month until each child was eighteen.

■ Laura appeals contending she should have more child support, an award of alimony, additional property, and attorney fees on appeal. We affirm.

Laura first contends the trial court did not correctly fix child support. In fixing child support, we use the child support guidelines. *See In re Marriage of Powell*, 474 N.W.2d 531, 533 (Iowa 1991) (under child support guidelines, there is rebuttable presumption the amount of child support resulting from the application of guidelines is correct); *In re Marriage of Ludwig*, 478 N.W.2d 416, 419 (Iowa 1991) (the application of the child support guidelines is mandatory unless the court makes written finding that adjustment is necessary); *Iowa Dep't of Human Servs. ex rel. Gonzales v. Gable*, 474 N.W.2d 581, 582 (Iowa 1991) (child support guidelines are to be used in determining child support unless court

makes written finding that adjustment is necessary); *In re Marriage of Toedter*, 473 N.W.2d 233, 235 (Iowa App.1991) (trial court was required to apply child support guidelines in effect at time of dissolution where trial court had made no written findings that they would be unjust or inappropriate); *In re Marriage of Rodgers*, 470 N.W.2d 43, 45 (Iowa App.1991) (level of child support should have been set in accordance with guidelines, absent any indication that guidelines were inappropriate or unjust).

Before applying the guidelines there needs to be a determination of the net monthly income of the custodial and non-custodial parent. *See Powell*, 474 N.W.2d at 533 (court must determine the parents' current income from most reliable evidence presented); *In re Marriage of Lalone*, 469 N.W.2d 695, 696 (Iowa 1991) (application of child support guideline chart first involves determination of net monthly income of each parent); *In re Marriage of Miller*, 475 N.W.2d 675, 678 (Iowa App.1991) (first step in using the child support guidelines is to arrive at "net monthly income"). The trial court found Scott's "net monthly income" based on an average of four years' income was $4,211, and Laura's "net monthly income" was $590. Laura contends Scott's net monthly income is $6,606.

This is one of a series of cases that have come before the Iowa appellate courts seeking further definition of "net monthly income" as used in the guidelines. *See In re Marriage of Gaer*, 476 N.W.2d 324, 329 (Iowa 1991) (in determining income available for child support, a self-employed truck driver would be allowed deduction for straight-line method of depreciation of truck); *Powell*, 474 N.W.2d at 334 (court may determine current monthly income based upon income prior to temporary unemployment); *Lalone*, 469 N.W.2d at 697 ("net monthly income" excluded alimony paid); *State ex rel. Dep't Human Servs. v. Burt*, 469 N.W.2d 669, 671 (Iowa 1991) (amount father ordered to pay to be applied toward his accrued obligation for public assistance is not deductible from gross income in determining net income under child support guidelines); *In re Marriage of*

*Cossel*, 487 N.W.2d 679, 682 (Iowa App. 1992) (averaged income of self-employed farmer over three years); *In re Marriage of Mayfield*, 477 N.W.2d 859, 862 (Iowa App.1991) ("net income" was properly found to equal average of last two years of taxable income); *Miller*, 475 N.W.2d at 679–80 ("net monthly income" did not exclude alimony paid); *In re Marriage of Jennings*, 455 N.W.2d 284, 287–88 (Iowa App.1990) (net monthly income under the guidelines means gross monthly income less specifically enumerated deductions).

The definition of income as used in the guidelines is most readily adaptable to the parent employed for a set monthly wage. Scott does not receive a net monthly wage. Scott's income is derived from commissions on his sales and the sales of agents under him. Scott contends his 1989 and 1990 income was artificially high because he received a one-time commission on an unusually large sale of one of his agents. Laura contends Scott's income will remain at the 1989–1990 level.

The definition of income in the guidelines is not easily applied to the earnings of persons such as Scott who are compensated for their services through commissions and who experience month-to-month and/or year-to-year fluctuations in income. The translation of the income of such a person to a "net monthly income" is difficult. *See Cossel*, 487 N.W.2d at 681.

We find no valid reason to modify the trial court determination of Scott's "net monthly income." Having so determined, we find the award made to be within the range provided for two children by the guidelines. Scott has not filed a cross-appeal, therefore, we need not decide whether the amount should be reduced when only one child is subject to support.

■ Laura also claims she should have been awarded alimony. Laura is a registered nurse and has been employed in that capacity in a full or part-time basis during the marriage. While her remuneration from employment has been less than Scott's, she also has assumed substantial responsibility for the parties' children. Laura has substantial employment opportu-nities with a nursing degree, but her child care responsibilities may make full-time employment difficult.

■ When determining the appropriateness of alimony, the court must consider (1) the earning capacity of each party, and (2) their present standards of living and ability to pay balanced against their relative needs. *See In re Marriage of Estlund*, 344 N.W.2d 276, 281 (Iowa App. 1983). Alimony has been defined as an allowance to the ex-spouse in lieu of a legal obligation to support that person. *See In re Marriage of Hitchcock*, 309 N.W.2d 432, 437 (Iowa 1981). Alimony is not an absolute right; an award depends upon the circumstances of each particular case. *In re Marriage of Fleener*, 247 N.W.2d 219, 220 (Iowa 1976). In assessing the issue, we look to the factors listed in Iowa Code section 598.21(3). *See In re Marriage of Hayne*, 334 N.W.2d 347, 350 (Iowa App. 1983). We affirm on this issue.

Laura's third claim is the property award is not equitable. The division made by the trial court resulted in a nearly equal division of the parties' assets. We affirm on this issue.

Each party shall pay his or her own attorney fees.

AFFIRMED.

DONIELSON, HAYDEN and SACKETT, JJ., concur.

OXBERGER, C.J., and SCHLEGEL, J., dissent.

HABHAB, J., takes no part.

OXBERGER, Chief Judge (dissenting).

I respectfully dissent.

I would award child support based on Scott's 1989–1990 income level. Scott's supervisor, Rex Teigen, testified Scott's income would more likely increase than decrease in the next year. Scott's income tax returns reflect a steady income increase over the past several years. It should not be the children's responsibility to return to court to prove Scott's income did not de-

crease; it is Scott's responsibility to prove his income actually did decrease.

I would also award Laura reimbursement alimony. Laura gave up her individual career pursuits in order to support Scott's business. While she worked as a nurse during the early years of marriage, she resigned to care for the children and assist Scott. Laura worked hard to provide Scott with business referrals. She frequently entertained his business associates and their spouses. She assisted with recruiting new employees and traveled with Scott to business meetings to further assist with entertaining colleagues. Scott's former office manager testified Laura was responsible for remodeling the offices in addition to entertaining Scott's business associates on a regular basis. She assisted with the monthly business newsletter. Laura also managed the household and cared for the children so Scott would not be distracted from his business pursuits. I am guided by the supreme court's guidelines as set forth in *In re Marriage of Francis*, 442 N.W.2d 59, 64 (Iowa 1989):

> Reimbursement alimony ... is predicated upon economic sacrifices made by one spouse during the marriage that directly enhances the future earning capacity of the other.... Similar to a property award, but based on future earning capacity rather than a division of tangible assets, it should be fixed at the time of the decree.

Laura made numerous sacrifices, including economic sacrifices, which have enhanced Scott's future earning capacity. She is entitled to reimbursement alimony.

SCHLEGEL, J., joins this dissent.